INDEPENDENT DISTRICT OF EDEN, NUMBER 2, *et al.* v. ANTHONY RHODES, President of Board of Directors, Appellant.

1. **Parties to Actions:** MANDAMUS: JOINDER OF PLAINTIFFS. Where an independent school district, by its board of directors, has entered into a contract with a teacher for the services of the latter, the district and the teacher may join, under section 2545 of the Code, in an action of *mandamus* to compel the president of the board to approve and file the contract, since they are both interested in the subject of the action, and in the relief demanded.

2. ———: PLAINTIFFS IN MANDAMUS: PUBLIC AND PRIVATE INTERESTS. Conceding that an action of *mandamus* on behalf of a school district, to compel its president to approve and file a teacher's contract, is so far in the interest of the public that it should be brought in the name of the state by the county attorney, under section 3377 of the Code, yet such an action may, under the same section, be brought by the teacher in his own name; and the fact that the district and the teacher join in the action in their own names is no ground for dismissing the action as to the teacher, as the relief to be granted, under the issues, is the same, and there can be no prejudice to the defendant.

3. **Independent School Districts:** CONTRACTS WITH TEACHERS: POWERS AND DUTIES OF BOARD AND PRESIDENT. In independent school districts, the power to employ teachers is vested in the board of directors as such; and when they have, in due form, entered into a contract with a teacher for his services, it is the duty of the president to approve and file the contract, and if he refuses to do so on the ground that the teacher employed is not of good moral character, and is inefficient and not acceptable to the patrons of the school, he may be compelled by action of *mandamus* to perform his duty, since these are matters wholly within the discretion of the board.

4. ——:——:——. Where the president of an independent school district unlawfully refuses to approve and file a teacher's contract, the board of directors has no power to appoint a president *pro tem.* to perform that duty, and such appointment, and the filing and approving of the contract by such appointee are mere nullities, and in no way relieve the president from the obligation to perform the duty.

5. **Mandamus:** REVIEW ON APPEAL. An action of *mandamus* is triable by ordinary proceedings, and can not be tried upon its merits in this court, but only upon errors assigned.

6. **Continuance:** DISCRETION OF COURT. Where the plaintiff had been allowed to amend as to a matter upon which both parties had introduced evidence, it is within the discretion of the trial court to refuse a continuance, upon the defendant's motion, to obtain witnesses, when such continuance will carry the cause beyond the term.

*Appeal from Marshall District Court.*—HON. J. L. STEVENS, Judge.

THURSDAY, MAY 25, 1893.

ACTION for *mandamus* to compel the defendant to file and approve a teacher's contract. Judgment for the plaintiffs, and the defendant appeals.—*Affirmed.*

*J. L. Carney,* for appellant.

*O. Caswell,* for appellees.

GRANGER, J.—On the first day of April, 1891, the board of directors of the plaintiff district, by a majority vote, agreed to employ the plaintiff Gambell as a teacher for the district for the period of nine months from September 14, 1891, in pursuance of which a contract in writing was prepared and signed by Gambell and the secretary of said board, and presented to the defendant, to be, by him, as president of the board, approved and filed, which the defendant refused to do, and this action is to compel the performance of that duty. The answer is in four divisions, the first being of admissions and denials. To the other three divisions the district court sustained a demurrer, and the

substance of each division can better be stated as we reach the different questions for consideration.

I. In the second division it is averred that there is a misjoinder of parties plaintiff. It will be seen that the district and the teacher, the contracting parties, are the plaintiffs. The argument by appellant is that, while the "causes of action are the same kind," they are not in favor of the same party; and reference is made to Code, section 2630, which is as to joinder of causes of action, and not parties. Section 2545 treats of joinder of parties plaintiff, and is as follows: "All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except where it is otherwise provided in this code." For the purpose of this question we, of course, assume the facts to be as pleaded. It then appears that the district and Gambell have made a contract. The law requires that it shall be reduced to writing, approved, and filed, and designates by whom this shall be done. This suit is to compel the performance of that agreement. The "subject of the action" is the contract. The "relief demanded" is the performance of the duty by the president of the board. Is it to be doubted that both the district and the teacher are interested in the subject of the action, the contract and the relief demanded, the approving and filing of the same? The question will hardly admit of discussion. Presumably, one party to the contract would be as much interested as the other, at the time of making it, in having the law complied with as to the manner of its making and preservation, and not, as claimed, that the teacher alone would have that interest.

1. PARTIES to actions: mandamus: joinder of plaintiffs.

II. It is contended that, because the district has only a public interest, the action should have been in behalf of the state, and by the public prosecutor, and reference is made to Code, section 3377, as follows: "The order of

2. ——: plaintiffs in mandamus: public and private interests.

*mandamus* is granted on the petition of any private
party aggrieved, without the concurrence of the prose-
cutor for the state, or on the petition of the state by the
county attorney, when the public interest is concerned,
and is in the name of such private party, or of the
state, as the case may be, in fact brought." While the
case, in a sense, involves a public interest, it is exceed-
ingly doubtful, in view of the law as to the duties of
the public prosecutor, and creating school districts, if
such a public interest comes within the legislative
intent of the section. It is not, however, necessary
that we should determine the question. The plaintiff,
Gambell, is a private person seeking relief, and comes
clearly within the rule of Code section 3378, and if it
should be held that the interest of the district should
be represented by the state, as a party, it would not
have the effect to dismiss the suit as to Gambell. Nor
would it in any way change the relief to be granted.
With Gambell alone as plaintiff, the result would be the
same as to defendant, under the issues, and hence there
is no prejudice.

III. The third division of the answer, after some
admissions, including the presentation to the defend-
ant of the contract, contains the following
defensive matter: "That said paper was
presented for the approval of defendant,
as president of said school board, and
acting under and in accordance with law,
this defendant refused to file or approve the said paper
as a contract with the said Gambell, and that said
action was taken after due consideration, and for the
reason that the contract did not conform to the pro-
visions of the law, and because the plaintiff, V. C.
Gambell, was not a person of good moral character;
that his employment was protested against by a large
number of patrons of the school, who had become dis-
satisfied by the said Gambell's former connection as

3. INDEPENDENT
school dis-
tricts: con-
tracts with
teachers:
powers and
duties of board
and president.

teacher with the schools of Rhodes, and, because of the inefficiency and failure of the said Gambell to discharge the duties of a teacher, a large number of the people residing in the independent school district refused to send their children to school. The defendant further shows that during the school year of 1890, the said Gambell failed to instruct his pupils at Rhodes, in physiology and hygiene, with special reference to the effect of alcoholic drinks and stimulants upon the human system, as required by the law of this state. The defendant further avers that acting, as he believed, in the best interests of the school at Rhodes, Iowa, and to faithfully discharge the duties of his office, as president of the board, in the exercise of his best judgment, and with the discretion vested in him under the law, he had, a long time prior to the beginning of this action, refused to approve or file the said paper as a contract with V. C. Gambell. Defendant further avers that each of the plaintiffs had full notice of the refusal of defendant to approve the contract prior to any services being rendered by said Gambell as a teacher."

The law governing district townships makes express provisions as to the employment of teachers for subdistricts, and devolves that duty upon the subdirector of each subdistrict, under such rules and restrictions as the board of directors may prescribe. Code, section 1753. All contracts with teachers shall be in writing, * * * and shall be signed by the subdirector or secretary and teacher, and be approved by, and filed with, the president. Code, section 1757. The general school laws, in their adaptation, are to the district townships, they being the original plan of organization, and the law, in its particular specifications and phraseology, is largely directed to the details of such organizations, and their methods of procedure. Independent districts are of later origin, and but few sections of the law are especially applicable to them. They are organized from

parts of district townships, with especial provisions for
a board of directors, a president and secretary, but no
subdirectors, nor are there subdistricts.  There is no
express provision of the law applicable alone to inde-
pendent disiricts, as to employing teachers; but it is
provided that schools are to be conducted, and the
board of directors is the only official power in the
district, and by the letter of the law the district is to
have as many schools as the board of directors may
deem proper.  Code, section 1806.  And by the same
section it is further provided that the district "shall be
governed by the laws enacted for the regulation of
district townships, so far as the same may be appli-
cable."

The appellant contends that the board has no
power to employ teachers; that they must be employed
by subdirectors; and refers to *Gambrell v. District
Township*, 54 Iowa, 417.  The case deals with the
authority of the board of directors of a district town-
ship, where the schools are in subdistricts, and the law,
as we have said, especially provides that the employ-
ment shall be by the subdirector.  That particular pro-
vision is certainly not applicable to independent districts,
where there are neither subdistricts nor subdirectors.
The conclusion necessarily follows that the authority
is, by a necessary implication, with the board of direct-
ors, in some form.  In *Athearn v. Ind. Dist. of Millers-
burg*, 33 Iowa, 105, it was sought to recover on a con-
tract made with the directors, acting independently, that
is, when not assembled as a board, and the following
language is used:  "It very clearly appears that the
laws governing the powers and duties of subdirectors
are applicable to the directors of independent districts,
and that acts which would be lawful if done by the first
named officers must be sustained when done by the
second.  They are clothed with like powers, and per-
form like duties."  The appellant regards that lan-

guage as holding that a director of an independent
district has the same powers in respect to hiring teach-
ers as a subdirector, and that the board of directors of
the independent district can not employ teachers,
because it was held in *Gambrell v. District Township*,
54 Iowa, 417, that the board of directors of such a town-
ship had no such authority.   The facts giving rise to
the language will not warrant such a conclusion.   It
was certainly never the intention to hold that a director
of an independent district possessed the same authority
as a subdirector in a district township, for a compari-
son of their respective duties, in many particulars,
would forbid such a conclusion.   That was a case in
which all the directors acted, each independently,
and the language is applied to such a state of facts.
The effect of such a holding as that claimed would rev-
olutionize, in a marked degree, the working of the
school system of the state.   Subdirectors were invested
with certain powers and duties in regard to their sub-
districts, being a part of the township, but in all mat-
ters pertaining to the township at large the board con-
trol, and a subdirector is without authority, except as a
member of the board.   The employment of a teacher
in an independent district is for the entire district,
alike represented by all the directors, and the provis-
ions of the law as to particular duties of subdirectors
are without application.   We think it quite important
to keep in mind, in construing the law as applicable to
independent districts, the distinctive features of its
organization from district townships, and the reasons
for the enactment of particular provisions.   It seems to
be both the letter and the spirit of the law that contracts,
when made and signed, in the case of district townships
by the subdirector and teacher, and, in independent
districts, by the secretary and teacher, shall be ap-
proved and filed, so as to become, in a sense, a part of
the record or files of the school district.

Now, as to the facts pleaded as a reason why this contract was not approved, as that the teacher was not a person of good moral character, and other facts going to his personal fitness to teach the school, we think the president possessed no discretionary power. These were discretionary matters for the board to settle pending the negotiations. When the contract, as to terms, was agreed upon, all that remained to be done was an observance of the law as to preparing and preserving the evidence of the contract as the law directs. Surely the law does not mean that the president possesses a discretionary power to overrule the action of the board of which he is a member. In *Place v. District Township*, 56 Iowa, 573, which was a district township case, it is said: "It becomes the duty, then, of the president of the board to determine whether the contract conforms to the provisions of the law, and give or withhold his approval according as he shall find the fact to be." Not designing to trench upon any state of facts not clearly within this record, which brings in question only the authority of officers of independent districts, we must say that we construe the law to invest the president with authority only to inquire whether the contract, as to matters not within the discretionary powers or authority of the board of directors, conforms to the provisions of the law. It does not invest him with authority to overrule the action of the board on a question of fact that is open to question, and necessary for determination. The construction claimed would put the president of the board, in many important particulars, in supreme control of the district, a result neither intended nor desirable.

IV. With a view to comply with the law, after the refusal of the defendant to approve and file the contract, the board of directors appointed one L. W. Thomas "as president *pro tem.*" for that purpose, and it was so filed and

approved, and these facts are pleaded in the fourth division of the answer as a waiver, on the part of the plaintiffs, of the performance of that duty by the defendant. There was no state of facts to warrant the appointment of a president *pro tem.*, and such a proceeding was a nullity. It in no manner affected the duties or obligations of the defendant. It was done after the refusal by the defendant, and was a futile attempt to substitute another to perform the duties of the president without his absence, or any other legal reason for so doing.

V. Some issues of fact are presented by the denials in the first division of the answer. The action is by ordinary proceedings, and the testimony is conflicting, beyond dispute. The appellant expresses a wish that the case should be considered on the merits to avoid further litigation. If by that it is meant that we should consider the evidence, and determine the facts by a preponderance of the evidence, we need only say that we are without jurisdiction for that purpose. The statute defines our duties under the different forms of actions. In this proceeding we can only review errors upon assignment, as in other ordinary actions.

5. MANDAMUS: review on appeal.

VI. The record of the proceedings of the board was introduced in evidence, and it failed to show the price per month, as agreed upon, for the teacher. The contract, as signed by the secretary and teacher, provided for seventy-five dollars per month. The court, against objections, admitted oral evidence as to the agreement on that point. It appears, also, that the copy of the contract attached to the petition was not an exact copy of the one offered in evidence, and the court permitted an amendment to the petition in that respect. After the introduction of the oral testimony by the plaintiff, the defendant applied for a continuance to obtain.

6. CONTINUANCE: discretion of court.

witnesses, which application was denied. In view of the testimony actually introduced by the defendant on that question, the situation of the trial, and the fact that the application was to take the case beyond the term, we think there was no abuse of the discretion reposed in the trial court.

We have examined the entire record, and find no error for which there should be a reversal.   AFFIRMED.