J. R. RODGERS, Appellant, v. THE INDEPENDENT SCHOOL DISTRICT OF COLFAX.

Selection of School Site: REVOCATION.  A school board selected an old site whereupon to erect a new schoolhouse, which was in contemplation, and ordered an election on the question of issuing bonds to build   The resolution ordering the election used the words "if practicable," with reference to placing the building on the old site.  The notice of election recited that it was proposed to issue bonds to build on the old site and the ballots used, so indicated.  *Held*, after these bonds were voted, the board could not use the bonds voted to build on a new site, especially where it does not appear that the old site was impracticable.

COURTS AND COUNTY SUPERINTENDENT.  McClain's Code, section 2985, declaring that any person aggrieved by any decision of the district board of school directors may appeal to the county superintendent, does not prejudice the right to an appeal to the courts, upon questions involving the authority of the board of directors.

*Appeal from Jasper District Court.*—HON. A. R. DEWEY, Judge.

FRIDAY, DECEMBER 11, 1896.

THIS is a suit in equity, by which the plaintiff seeks to enjoin the defendant district from appropriating the proceeds of certain schoolhouse bonds to erect a school building on any other location than upon the same site which has heretofore been used for schoolhouse purposes.  It is admitted in the answer that the district, by its school directors, had purchased a new site for a schoolhouse, and it is averred that said directors had the legal right to select the site of the proposed new building.  A temporary injunction was granted, and, upon a hearing upon the pleadings and evidence, the temporary injunction was dissolved,

and the petition was dismissed.   Plaintiff appeals.—
*Reversed.*

*H. S. Winslow* for appellant.

*J. C. Cook* and *C. O. McLain* for appellee.

ROTHROCK, C. J.—I.   The case was submitted to
the district court upon the pleadings, and upon an
agreed statement of facts.   No evidence, aside from
the agreed stipulation, was introduced by either party.
It appears from the pleadings, and the statement of
facts, that the plaintiff is and has been a resident, tax-
payer, and voter in said independent district.   On the
twenty-sixth day of April, 1895, the board of directors
of the district adopted a resolution submitting to the
voters a proposition to issue bonds, not exceeding fif-
teen thousand dollars in amount, for the purpose of
erecting a schoolhouse.   In  pursuance of this resolu-
tion, a notice of the election was properly given, in
which the time for the election was fixed for the fif-
teenth day of May, 1895.   It was recited in the notice
of the election that "an opportunity would be given
the electors to vote on the location of the new school
building," and that "a ballot box for that purpose
would be provided."   The result of this election is set
out in the agreed statement of facts as follows: "(4)
That the ballot used at this election was in accordance
with the terms of the notice provided for the expres-
sion of the choice of the voter as to the site upon
which the schoolhouse should be erected, and there
were cast at the election one hundred and sixty-six
votes for bonds, two hundred and twelve votes against
bonds, one hundred and fourteen votes for a
new site, and two hundred and fifty-seven votes
against a new site." This proposition having been
defeated, another election was ordered by resolution,

by which the question of voting twelve thousand five hundred dollars in bonds to erect a schoolhouse "on the old site, if practicable," was ordered to be submitted to the voters. A notice of this election was duly given, and the electors were advised thereby that it was proposed to issue "bonds not to exceed $12,500 to build schoolhouse on old site." This last election was held on the twelfth day of June, 1895. The ballots cast at this election were in the following form:

SPECIAL ELECTION.

on

ISSUING BONDS FOR $12,500.00

To build schoolhouse on old site.

FOR BONDS.

AGAINST BONDS.

To vote "for bonds" scratch off the words, "Against Bonds."

To vote "against bonds" scratch off the words, "For Bonds."

These ballots were so marked that there were two hundred and twenty-eight votes cast "for bonds," and fifty-eight votes "against bonds." In about one week after this last election, the board of directors passed a resolution by which a committee of the board was appointed to purchase another site for the new building, and on the twenty-fourth day of July. 1895, at another meeting of the board, a resolution was passed, by which the board authorized a purchase of three full lots, half of another lot, and part of still another lot, for a site for the proposed new schoolhouse. At the time this resolution was passed, there was no money in the district treasury belonging to the schoolhouse fund, except the proceeds of the bonds which had been voted, and which the board had

then sold. It does not appear what price was paid for the lots purchased. It was, however, paid by using part of the proceeds of the sale of the bonds which were voted to erect a new building on the old site. The last paragraph of the agreed statement of facts is as follows: "(13) That the board of directors, after the vote was taken and the bonds were sold, changed their minds as to the site, giving it as their opinion, that it was not practicable to erect a new schoolhouse upon the old site." It ought to be stated, further, that the resolution to buy the lots for a new site provided that, if certain lots could not be purchased, then that the board "proceed at once to build on the old site;" and no question of the practicability of the old site was stated in the notice of the election, nor on the ballots, and the vote was for a building to be erected on the old site, and not elsewhere.

The contention of the appellee is that the school board is the only authority clothed with the power to select schoolhouse sites, and that the vote, in so far as it was a direction to build on the old site, was void, and not binding on the board; and it is urged that the district court had no jurisdiction of the controversy, because the only remedy to which appellant was entitled was an appeal to the county superintendent of schools. This last-named question requires very brief consideration. It is provided by section 2985 of McClain's Code, that "any person aggrieved by any decision or order of the district board of directors in matters of law or fact may * * * appeal to the county superintendent;" and, under section 2991, "an appeal may be taken from the decision of the county superintendent to the superintendent of public instruction, * * * and the decision when made shall be final." It has been held by this court that these provisions for appeal are not necessarily applicable to all school questions. In

*Perkins v. Board*, 56 Iowa, 476 (9 N. W. Rep. 357), it is said: "The courts of the state are arbiters of all questions involving the construction of the statutes, conferring authority upon officers and jurisdiction upon special tribunals. It was certainly never the intention of the legislature to confer on school boards, superintendents of schools, or other officers discharging *quasi* judicial functions, exclusive authority to decide questions pertaining to their jurisdiction and the extent of their power. All such questions may be determined by the courts of the state:" And very many such cases have been determined by this court in which jurisdiction was entertained without question. The very question presented by this record is whether the board of directors are, under the statute, clothed with authority to change the location of the proposed schoolhouse after the bonds were voted and sold.

II. It is conceded by counsel for appellant that the board of directors have the authority to fix the location of proposed schoolhouses; but it is contended that, under the facts of this case, that power was exercised when the last election was held, and the vote recorded. It may be that in the absence of the action of the board in taking the sense of the voters to issue bonds and build the house on the old site, and if the bonds had been voted without condition, the directors might lawfully select a new location. Of course they were required to make the selection and locate the building at a place where the inhabitants of the district and the patrons of the school would be reasonably provided with school facilities. Their authority can not be arbitrarily and unreasonably exercised; and when they have once located the site of a new building, and the electors and taxpayers vote for bonds to erect the same at the designated place, the power, having been exercised,

cannot be revoked, unless for some controlling reason. It is to be conceded that, in the resolution ordering the last election, the words "if practicable" were used in connection with the designation of the old site. But in the notice to the electors, and on the face of the ballots, there was no such condition. It was a square vote to issue bonds and build on the old site. The result of the first election demonstrated conclusively that if the words "if practicable" had been inserted in the notice for the last election, and on the ballots, no bonds would have been voted. The school directors (defendant) ought not now to be permitted to abandon the old site, and expend any part of the proceeds of the bonds in purchasing a new location, and erecting a building thereon. The bonds were not voted for any such purpose. It is useless to further elaborate the case. There is nothing in this whole record which tends to show that the old site was impracticable, except the fact that the directors "changed their minds as to the site." It was averred in the answer that it was not practicable to build on the old site; but there is no evidence to sustain that issue. We have said that the board designated the old site as the one selected, before the election was held. By that we mean that the notice of election fixed that location absolutely, and the ballots cast ratified and approved it; and, if the board properly recorded the proceeding, the face of the record fixed the site, and it remained so until the directors changed their minds. We need cite no authority in support of the plain and fundamental proposition we have been discussing. There have been many controversies in this court pertaining to the location of schoolhouses. It is a fruitful source of litigation. If we were to sustain the action of the school board in this case, it would authorize boards of directors to mislead electors in

voting bonds in a way that might seriously prejudice the interests of school districts. The decree of the district court is REVERSED.