O. B. KNAACK et al., Appellants, v. SCHOOL TOWNSHIP OF
BLACK HAWK, Appellee.

**SCHOOLS AND SCHOOL DISTRICTS:** School Buildings—Powers
of Electors and Directors Contrasted. Electors decide whether
a schoolhouse shall be built and the maximum amount to be
spent thereon.

The directors decide *how* it shall be built and *what* it shall
cost, within the limit of the authorization.

*Held,* the insertion, without intent to mislead, in a petition
for a schoolhouse and in the notices, etc., of the election, of a
statement that the proposed schoolhouse would be built of brick,
was not binding on the directors, nor were the directors obli-
gated to spend the entire amount authorized.

*Appeal from Grundy District Court.*—H. B. BOIES, Judge.

MONDAY, FEBRUARY 19, 1917.

ACTION to enjoin the defendant from constructing a
schoolhouse. On hearing, the petition was dismissed. Plain-
tiffs appeal.—*Affirmed.*

*Strack & Sieverding,* for appellants.

*S. W. DeWolf,* for appellee.

LADD, J.—The plaintiffs, who resided in
Subdistrict No. 2 of the School Township of
Black Hawk in Grundy County, bring this
action to enjoin the construction of a school-
house. A petition, purporting to be signed
by 10 electors, and praying the board of directors "to call
a special meeting of the voters of said Subdistrict No. 2 of
said township * * * for the purpose of voting a school
tax for * * * the construction of a new schoolhouse
* * * in said subdistrict * * * said schoolhouse to
be constructed of brick," was filed with the secretary of the
school township prior to January 4, 1915, and was taken
up on January 26th following, when the directors present

SCHOOLS AND
SCHOOL DIS-
TRICTS : school
buildings : pow-
ers of electors
and directors
contrasted.

unanimously resolved "that a new school building is needed and shall be erected in said Subdistrict No. 2 * * * and the president and secretary are hereby instructed to submit said question to the voters of the school township of Black Hawk at a special election." The notice was prepared accordingly, and recited the time and place of election, and that the questions to be submitted were:

"(1)    Shall a specific tax in the sum of $3,000 be levied for the purpose of erecting a new brick schoolhouse in Subdistrict No. 2?    (2) Shall a site be purchased, located a quarter of a mile west of the present site, on which to build a new building?"

The notice was posted and the election held, resulting in the carrying of the first proposition by a vote of 16 to 1. The last was lost by a vote of 10 to 4. A resolution was adopted by the board of directors January 29, 1916, "that a frame schoolhouse be built in Subdistrict No. 2," a building committee was designated and instructed "to draw up plans and specifications for the schoolhouse." Later on, these were submitted to the board, and the contract let for construction at a cost of $1,967. The restraining order is sought on the ground that the building is to be frame instead of brick. It is stipulated "that no fraud or bad faith is charged against plaintiff or defendants." The course of the board of directors is explained by the fact that a petition for the organization of a consolidated dis-- trict, including the incorporated town of Morrison, and Washington Township, bordering Black Hawk Township on the west, was pending, and considerable opposition manifested in Reinbeck and Black Hawk Township, for that it was thought that some lands were about to be included which ought to be taken into a consolidated district to include Reinbeck and Black Hawk Township, if consolidation of these were to be effected, and also by reason of talk of organizing such consolidated school district, and the

board deemed it unwise to construct other buildings of brick or other permanent material pending a settlement of the question of consolidation. The situation illustrates the wisdom of our school laws. The voters have the power to vote or decline to vote a tax for the construction of a schoolhouse (Paragraph 7 of Section 2749 and Section 2779 of the Code); but the authority to determine the plan and the character of the schoolhouse to be erected is conferred on the board of directors, subject only to the approval of the county superintendent. The board of directors was in a situation readily to meet the contingency here presented, while the voters might not act quickly enough to avoid probable consequences. Moreover, experience has shown that efficiency in such matters is better secured through a small body representing the electors, than through the entire electorate. For this reason, as provided by Section 2745 of the Code, "the affairs of each school corporation shall be conducted by a board of directors." Of course this means that such affairs shall be carried on under and as limited by statute. Thereunder, the electors determine whether a building may be constructed, in passing on the proposition as to whether a tax to meet the cost thereof shall be voted; but, having so determined, their power is exhausted, and the board only is authorized to say what kind of a building it shall be, providing only this meets the approval of the county superintendent, and in cost does not exceed the amount of the tax voted.

That the petition suggested that the schoolhouse be constructed of brick merely indicated the preference of its signers, but was in no way binding on the board, of directors. The designation of the new building as being "brick" was mere surplusage, unless it was calculated to mislead the voters and might reasonably be found to have induced them to vote for the tax, when otherwise they probably would not have done so. The board properly might not submit to

the voters what kind of material should be made use of in the construction of the building, nor did the board undertake to do so. The president and secretary on their own motion inserted the word "brick" in their proposition to be submitted and in the notice. Ordinarily the material of which a schoolhouse is to be constructed is not a matter in issue in such elections, and electors are not to be assumed to misunderstand the extent of their powers, in the absence of anything indicating to the contrary, or bad faith on the part of the officers. A vote as to the kind of material to be used or character of building to be erected was, at most, advisory, and not binding on the board of directors. *Rodgers v. Independent School District of Colfax,* 100 Iowa 317, is not inconsistent with this view. There, propositions to issue bonds not to exceed $15,000 for the construction of a schoolhouse, to be constructed on a new site, were voted down at the first election, and thereafter the question of "issuing bonds for $1,250 to build schoolhouse on old site" was submitted to the voters, and a majority voted in the affirmative. About a week thereafter, the board proceeded to purchase a new site on which to erect the building, though there was no money in the treasury other than that derived from the sale of the bonds, and payment was made from the proceeds of the bonds. Conceding that authority to purchase sites and locate schoolhouses was vested in the board, the court nevertheless held that, inasmuch as the bonds were voted for the construction of a building on the old site, none of the proceeds of the bonds might be used for purchasing a new site, and, as the voters had previously decided against issuing bonds in connection with voting against acquiring a new site, the insertion in the proposition last submitted, after the clause "to build schoolhouse," of the words "on old site," was done designedly to influence the electors to vote favorably thereon, and having so done, and the proposition having been adopted in reliance there-

on, said board was bound to construct on the old site as proposed. This was no more than exacting good faith on the part of the board of directors in dealing with the voters, and forbidding it, after purposely throwing out an inducement to obtain, and obtaining their favorable action thereby, to repudiate the inducement, if one which might properly be carried out. To hold otherwise would endorse the attempted perpetration of a fraud on the electorate by the officers representing it.

The case in its facts is the converse of this. Here good faith on the part of the directors is conceded. The insertion of the kind of material was not in pursuance of the resolution of the board. For all that appears, the voters were not influenced thereby either way in voting. No deceit was practiced, and the board of directors was acting within its authority in constructing the frame building. Though the statute impliedly limits the board to the expenditure of the tax voted, whether that much shall be expended is discretionary with the board.—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.