EDITH A. HOFFA, Appellant, v. E. P. SAUPE et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Teachers—Contracts—Power of Director. A contract for teaching may not be entered into with a subdirector contrary to the duly adopted requirements of the board of directors.

Headnote 1: 35 Cyc. p. 1077.

*Appeal from O'Brien District Court.*—WILLIAM HUTCHINSON, Judge.

FEBRUARY 17, 1925.

A PROCEEDING in mandamus, to compel the defendant Saupe, as president of the board of directors of a school township, to sign an alleged contract between the plaintiff and W. E. Grogan, a subdirector, employing the plaintiff as a teacher for the school in Subdistrict No. 3 in the township of Summitt, O'Brien County, Iowa. The district court refused the prayer of plaintiff's petition, and dismissed it. Plaintiff appeals.—*Affirmed.*

*T. E. Diamond,* for appellant.

*Herrick & Herrick* and *L. O. Lampman,* for appellees.

ALBERT, J.—W. E. Grogan had been the subdirector in District No. 3 in Summitt Township, O'Brien County, for some years previous. He was re-elected, and was sworn in and took his office for a new term at the meeting of the board on the second day of July, 1923.

The plaintiff, Edith A. Hoffa, a married woman, had taught in Grogan's district for two or more years preceding the time in controversy. For the year previous, being the school year

commencing in the fall of 1922, Grogan had made a contract with her to teach, and the matter, coming before the board, met with some opposition; but, in the light of the fact that Grogan had contracted with her, the board ratified the contract, and she taught for that year.

We find from the evidence that the members of the board gave Grogan to understand that they were opposed to her teaching; and, at the meeting on the said second of July, the matter was brought up and discussed before the board; and while the record shows no official action, the evidence shows, by preponderance, that the members of the board then notified Grogan that he must not employ the plaintiff to teach in his subdistrict. At that meeting, there was also discussed the question—and most of the members expressed themselves as opposed to it—of hiring any married woman to teach in the township. Grogan left the meeting, however, before it was closed; and after he left, in pursuance to the talk that was had, a resolution was passed by the board, the substance of which was that, in the future, no married women were to be employed to teach in any of the schools of said township.

After leaving the meeting, in the late afternoon, Grogan went home, and called up the plaintiff, who came to his house that evening; and he made and signed a contract with her, employing her to teach in his subdistrict for the next ensuing school year. Later, in the latter part of that month, the plaintiff presented her contract, signed by herself and Grogan, to the president of the board, Saupe, who refused to sign and approve the same, and so informed the plaintiff, giving his reasons therefor. While the record is not very clear, the board seems to have employed another teacher to teach in this subdistrict.

When the time came, in September, for opening the school, Grogan accompanied the plaintiff to the schoolhouse, turned over the keys to her, and directed her to teach, which she proceeded to do. The board, on learning of this, at a special meeting authorized a notice to be served upon the plaintiff, advising her that she was occupying said school wrongfully and without authority, and that the board did not or would not recognize her as a teacher in said township; that, if she persisted in teaching the said school, she did so at her own peril, and that they

would in no way be liable for her salary, and no salary would be paid her by the board; that the board refused to hire her as a teacher, and refused to tolerate her as a teacher, and would in no way reimburse her for services performed, or services claimed by her to be performed, as a teacher in said school. This notice bears date of September 24th, and was served on that date by the sheriff of O'Brien County upon the plaintiff.

On the 7th of November, 1923, the plaintiff herein brought this action, asking an order of the court directing Saupe, as president of the board, to sign the said alleged contract and file the same with the secretary of the board, as by law provided. Primarily, she bases her action on the plea that it was the custom or usage of this board of directors to permit each subdirector to employ the teacher or teachers for that subdistrict; and, over objection, she tendered evidence in the case, of such custom.

As to this plea of custom, we are of the opinion that, under the facts in this case, it is not available to the plaintiff. None of the cases cited by the plaintiff support such doctrine, when applied to the set of facts we have here. The general rule in regard thereto is thus stated in 17 Corpus Juris 476, Section 37:

"Where an officer's duties are prescribed by statute, usage will not excuse their discharge in a different manner. So proof of a custom is not permissible to enlarge the powers of officers whose authority is defined by statute."

Under each of the codes of Iowa up to and including McClain's Revision of 1888, it was provided, in substance, that:

"The subdirector, under such rules and restrictions as the board of directors may prescribe, shall negotiate and make in his subdistrict all necessary contracts for * * * employing teachers. * * * All contracts made in conformity with the provisions of this section shall be approved by the president and reported to the board of directors, and said board, in their corporate capacity, shall be responsible for the performance of the same on the part of the district township." Section 1753, Code of 1873 (Section 2868, McClain's Code of 1888).

The Code of 1897, Section 2778, however, changes this rule, and the material part reads as follows:

"The board * * * shall elect all teachers and make all con-

tracts * * *.. Contracts with teachers must be in writing * * *
signed by the president and teacher, and filed with the secretary
before the teacher commences to teach under such contract.''

This section of the Code of 1897 was amended by Chapter
107 of the laws of the Twenty-eighth General Assembly, by
adding thereto:

"But the board may authorize any subdirector to employ
teachers for the schools in his subdistrict.''

It will be noted that, up to the Code of 1897, the subdirec-
tor had the power to employ the teachers for his subdistrict, and
the contract was to be approved by the president of the board.
Under the Code of 1897, the board, in its official capacity, em-
ployed the teachers. This statute, of course, would take away
from the subdirector the right to employ the teachers for his
subdistrict. By the aforesaid Chapter 107 of the Acts of the
Twenty-eighth General Assembly, the power was given to the
board, in event they saw fit, to authorize a subdirector to em-
ploy teachers for his school. This is the law that was in opera-
tion at the time this controversy arose.

Aside from the evidence of the manner of this board's do-
ing business up to and before the time of this controversy, there
is nothing in the record to show that the board ever authorized
this subdirector, or any other, to employ teachers. By assuming
that the evidence was admissible of how the board had carried
on their business up to the time in controversy, the evidence
shows that, at that time, at the meeting on the second of July,
the subdirector Grogan was given to understand that he could
not employ this plaintiff as teacher in his school. He also un-
derstood, before he left the meeting, from the expression of the
defendant members of the board there, that they were opposed
to employing married women to teach in that district township.
With this knowledge on his part, he seems to have determined
to run the matter to suit himself. He went home and called up
this plaintiff, and signed a contract with her to teach his school
for the succeeding year. There is no claim in the case, and none
could be made, that the board ratified his act in so making this
contract, or consented thereto in any way. The plaintiff herein
cannot claim advantage of this alleged custom, if one were to be

recognized, because this court said, in the case of *Thompson v. Linn*, 35 Iowa 361, at 365:

"When a teacher or other person is about to enter into a contract with a school subdirector, he knows that he is dealing with a public agent whose powers are subject to regulations and restrictions by the board of directors, and he is bound to know what those rules and restrictions are, and should be governed accordingly."

This is a fair statement of the law governing situations of this kind; and under it the teacher, in dealing with this subdirector, was bound to know whether or not he was authorized by the board to enter into this contract, and if, in fact, he was not so authorized, then she must be dealt with accordingly. More than this, after she had procured this contract, she went to the president of the board, and asked him to sign the same. He refused, and gave her his reasons for refusing, or at least a part of them; and the contract was never signed. She started to teach the school, and was notified to desist, and that the board did not recognize her as a teacher, and would not pay her. In doing this, we are satisfied that the board was acting within its power, and did nothing but what it was authorized to do; and that the president was justified in refusing to sign the contract.

In the case of *Gambrell v. District Township of Lenox*, 54 Iowa 417, quoting a statute that existed, giving the subdirector the right to employ teachers, but providing that all contracts should be approved by the president and reported to the board of directors, it is said:

"This statute prescribes the manner of entering into a contract which shall be binding upon the district as an incorporation. It must be approved by the president; without his approval the district is not bound. It is a familiar rule of law that corporations of this character can be bound by contracts only when they are entered into in the manner and by the officers prescribed by the statute. There was no claim made that defendant, by suffering plaintiff to teach the school, or in any other manner, ratified the contract."

Under these holdings, we are abundantly satisfied that the

action of the district court in refusing the mandamus and dismissing the plaintiff's petition was justified.—*Affirmed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.