ALLIE SHILL, Appellee, v. SCHOOL TOWNSHIP OF ROCK CREEK, Appellant.

No. 39810.

NOVEMBER 12, 1929.

REHEARING DENIED FEBRUARY 22, 1930.

*E. M. S. McLaughlin* and *O. P. Myers,* for appellant.

*M. R. Hammer, Jr.,* and *Ross R. Mowry,* for appellee.

STEVENS, J.—I. On May 17, 1927, appellee entered into a contract in writing, to teach the public school in Subdistrict No. 3 of the School Township of Rock Creek, Jasper County.

 The contract was duly filed with the secretary. By action of the board at a meeting called by the president and held on July 1st following, appellee was prevented from teaching the school. This action is to recover damages for the breach of the contract.

Appellee resided in the vicinity of, and had previously taught the school in, Subdistrict No. 3. The patrons thereof were not satisfied with her services as teacher, and objected to her continuing in that capacity. At the meeting of the township board in March, 1927, a motion was passed authorizing the subdirectors to employ teachers for their respective districts. The contract in question was presented by appellee to the president of the school board, and signed by him. Thereafter, a meeting of the board was called for July 1st, to consider the method by which it was claimed the signature of the president of the board had been obtained, and to determine what action should be taken. Appellee was notified of the meeting, and was present throughout. No formal charges of any kind were filed with the secretary, and the meeting was conducted in some informal manner. Many witnesses were called and examined, but were not sworn. The president of the board testified that he was induced to sign the contract by the statements and representations of appellee that she had visited the patrons of the school, and that they were satisfied to have her continue as the teacher thereof. He further testified that he would not have signed the contracts, but for these statements and representations by appellee. The subdirector testified that, prior to signing the contract, he made inquiry of a number of the patrons, and that he was assured that the employment of appellee would be satisfactory to them. His testimony in chief, however, was much weakened by the cross-examination. Appellee admitted that she had not visited or talked with the patrons, and denied that she had so stated to the president of the board. A majority of the board voted against continuing appellee as teacher. Appellee testified, upon the trial below, that she did not know of the action of the board or that she would not be permitted to teach the school until the day on which the term was scheduled to begin; that she went to the schoolhouse prepared to teach, and then discovered for the first time that another had been employed.

The answer sets up two defenses: The alleged fraud in the procurement of the signature of the president of the board to the contract, and the action of the board at its meeting on July 1st, which is pleaded as a prior adjudication of all the rights of appellee in the contract. Of course, both parties concede that there is a dispute in the testimony as to whether any false statements or representations were made by appellee to the president prior to the signing of the contract by him.

The motion of appellee for a directed verdict presented only questions of law. The trial court held that the duty of the president of the board to sign the contract was absolute, and that in the performance of such duty no discretion was exercised by him. This question arose in *Independent Dist. v. Rhodes,* 88 Iowa 570, which was an action in mandamus, to compel the president of the board to sign a teacher's contract. One of the reasons assigned by the president of the board in the *Rhodes* case for refusing to sign the contract was that the teacher named therein was not a person of good moral character, and that his employment was objected to by a large number of the school's patrons. In passing upon this question, the court said:·

"Now, as to the facts pleaded as a reason why this contract was not approved, as that the teacher was not a person of good moral character, and other facts going to his personal fitness to teach the school, we think the president possessed no discretionary power. These were discretionary matters for the board to settle, pending the negotiations. When the contract, as to terms, was agreed upon, all that remained to be done was an observance of the law as to preparing and preserving the evidence of the contract as the law directs. Surely the law does not mean that the president possesses a discretionary power to overrule the action of the board of which he is a member."

The writ commanding the president of the board to sign the contract was sustained. The statute in force at the time the controversy in the *Rhodes* case arose provided that:

"The subdirector, under such rules and restrictions as the board of directors may prescribe, shall negotiate and make * * * contracts * * * employing teachers * * * ." Section 1753, Code of 1873.

The statute also required contracts for the employment of teachers to be in writing, to be signed by the subdirector or secretary, and approved by and filed with the president of the board. Section 1757, Code of 1873. This statute was changed by the twenty-second general assembly, so as to provide that teachers shall be elected by the board, and that all contracts therefor must be signed by the president and teacher. Section 2778, Code, 1897.

Section 4228 of the Code of 1927 is similar to the prior sections referred to, but contains a provision that "the board may authorize any subdirector to employ teachers for the school in his subdistrict."

The succeeding section requires the contract to be in writing, and "signed by the president and teacher, and shall be filed with the secretary before the teacher enters upon performance of the contract."

The authorization by the board, permitting subdirectors to employ teachers, is subject to the provisions of Section 4229 of the Code of 1927, and the contract must be signed by the president. *Hoffa v. Saupe*, 199 Iowa 515; *Shackelford v. District Township*, 203 Iowa 243.

It will be observed that the statute contains no provision for the signing of the contract by the subdirector. It must be signed by the teacher and the president of the board. The contract involved in this action was signed by the teacher and the president of the board, and approved by the subdirector. Unless some distinction based upon changes in the statute may be made, the decision in the *Rhodes* case is decisive of the point under discussion. Originally, the statute authorized the subdirector to employ the teacher. Is there any difference in the authority thus conferred by the statute and the authority given him by the board to employ teachers for his subdistrict in pursuance of the provisions of Section 4228 of the Code? The authorization in each case is to employ teachers. If the president of the board, under the provisions of the Code of 1873 quoted above, exercised no discretion in signing teachers' contracts, there is no apparent good reason for holding that he may do so where the contract is one entered into by a subdirector in pursuance of authority previously conferred by the board. When the word "subdirector" is substituted for the board in

the quoted extract from *Independent Dist. v. Rhodes,* supra, the parallel is complete. As the duty of the president to sign the contract is imposed upon him by law, and is in no sense discretionary on his part, the statements and representations alleged to have been made to him by appellee were, so far as this transaction is concerned, immaterial. He could not properly refuse to sign the contract.

II. Appellee did not appeal to the county superintendent from the action of the board on July 1st. School boards are authorized to "by a majority vote, discharge any teacher for incompetency, inattention to duty, partiality, or any good cause, after a full and fair investigation made at a meeting of the board held for that purpose, at which the teacher shall be permitted to be present and make defense, allowing him a reasonable time therefor." Section 4237, Code, 1927.

It is now contended by appellant that the action of the board was authorized by the foregoing statute, and that, as no appeal was taken therefrom, all the rights of appellee in the contract are fully and finally adjudicated thereby. This position of appellant's is likewise untenable. The action taken was clearly not under this section. Appellee had not entered upon the discharge of her duties under the contract, and it is conceded that she did nothing after the contract was signed, to cause an inquiry to be made or the hearing before the board to be had. It was at no time claimed that appellee was incompetent, or that she had violated any duty imposed upon her by the contract. The whole contention before the board at its meeting in July and upon the trial below was that she had induced the president of the board to sign the contract by lying and deceit. This alleged conduct antedated the signing of the contract. In these circumstances, no appeal from the action of the board to the county superintendent was necessary. *Schultz v. Consolidated Ind. Sch. Dist.,* 200 Iowa 293; *Courtright v. Consolidated Ind. Sch. Dist.,* 203 Iowa 26; *Rodgers v. Independent Sch. Dist.,* 100 Iowa 317. Appellee, therefore, had a right to commence action in the district court for damages. *Rodgers v. Independent Sch. Dist.,* supra.

The only record made by the secretary of the board is the following:

"Arguments were heard on the contract of Allie Shill for teaching No. 3 school. Full time was allowed all parties. The question was then put to a vote—yes being in favor of the teacher continuing and no against her continuing. The result of the paper ballot: Yes, 4; No, 5."

The apparent theory of the board was that the contract, although entered into by the teacher and the president after oral employment by the subdirector, was still subject to review by the board. The question of the authority of the board at this point is not raised or discussed by counsel, except as the same is incidental to the authority of the board to discharge a teacher under the provisions of Section 4237 of the Code of 1927.

III. Judgment was entered for the full amount which appellee would have received, had she been permitted to fulfill the contract. This, appellant asserts, is not the proper measure  of damages. Appellee testified that she made inquiry as to a vacancy in the schools in her vicinity, and that she sought employment in other communities and subdistricts. The testimony on behalf of appellant tended to show that there were vacant schools in other parts of Jasper County at the time appellee first learned that she would not be permitted to teach the school. It was the duty of appellee to make a reasonable effort to secure employment of the same character in the community, but she was not required to seek similar employment abroad, or of a lower or different grade. There is no averment in the answer or claim in the testimony of appellant that appellee might have found employment in the same locality, or that she could have secured other similar employment. The evidence at this point is without substantial conflict. The measure of damages allowed by the court is the correct one. *Byrne v. Independent Sch. Dist.*, 139 Iowa 618.

We have confined our discussion and decision in this case strictly to the propositions raised by appellant, and hold only as stated. We find no reversible error in the record, and the judgment of the court below is affirmed.—*Affirmed.*

ALBERT, C. J., and DE GRAFF, MORLING, WAGNER, and GRIMM, JJ., concur.