(No. 20908.—

THE PEOPLE *ex rel.* Walter Ahlschlager *et al.* Appellees, *vs.* THE BOARD OF REVIEW OF COOK COUNTY *et al.* Appellants.

*Opinion filed February 23, 1933—Rehearing denied April 21, 1933.*

158

Dunn and DeYoung, JJ., dissenting.

Thomas J. Courtney, State's Attorney, Roy Massena, Louis H. Geiman, and John E. Pedderson, (Hayden N. Bell, Mayer, Meyer, Austrian & Platt, Robert S. Cushman, and Thomas D. Nash, of counsel,) for appellants.

Watkins, TenHoor & Gilbert, for appellees.

Mr. Justice Duncan delivered the opinion of the court:

On February 13, 1931, a petition was filed in the superior court of Cook county in the name of the People, on the relation of Walter Ahlschlager and twelve others, praying for a writ of *mandamus* commanding the board of review of Cook county to grant a hearing to the relators and other property owners of Cook county on the complaints which they had filed with that board as to the assessment of their real property for the year 1929 and to review and correct such real estate assessments as shall appear just. A demurrer to the petition on the ground of misjoinder of

parties plaintiff was filed by the board of review. The petition was amended by making Robert M. Sweitzer, county clerk, and Joseph B. McDonough, county treasurer of Cook county, parties defendant, and praying for a writ of *mandamus* against them commanding that they return to the board of review the books, records and documents necessary for the board to hear the complaints of the relators and other property owners as to the assessment of their real property for the year 1929. The demurrer to the petition was overruled. The county clerk and county treasurer filed an answer, and a separate answer was filed by the board of review. After a hearing a judgment awarding the writ of *mandamus* to the thirteen relators was rendered, and the respondents have appealed.

It is alleged in the petition as amended that each of the relators filed a complaint in writing in duplicate with the board of review on or before November 28, 1930, alleging that his property had been incorrectly assessed; that each complaint was filed on a form of complaint that had been adopted by the board of review as the form to be used in filing complaints before it and gave the information required to be given in such complaint by such form; that each complaint was filed within the time specified for the filing of complaints before the board of review; that the relators demanded of one of the members of the board that they be granted a hearing on their complaints; that on February 3, 1931, the relators were informed by the board that no further changes in assessments would be made and that no hearing would be granted to relators on their complaints; that approximately 40,000 complaints in addition to those of the relators were filed before the board on which no hearings were granted, and the arbitrary disregard by the board of said complaints and the failure and refusal to grant hearings thereon was a refusal by the board to function and perform its legal duties; that the county clerk and county treasurer were reported to have possession, custody

and control of the books, records and documents relating to the assessment for 1929 of the real property of the relators, and it might be necessary for the court to command said officers to return the books, records and documents to the board of review. A blank form of complaint like that used by relators in filing their complaints before the board of review and a statement giving the legal description of the real estate owned by each relator were attached to the petition as exhibits.

Robert M. Sweitzer as county clerk, and Joseph B. McDonough as county treasurer, filed a joint and several answer to the amended petition, in which they alleged that the assessment books for the year 1929 were delivered to the county clerk in installments from January 1, 1931, to February 13, 1931; that abstracts of the property assessed were prepared by the clerk and forwarded to the State Tax Commission; that the tax commission equalized the assessments and returned the abstracts to the clerk, who then calculated the tax rates for the different taxing bodies in Cook county, 408 in number, and began making the extension of taxes in the tax books; that the items of real property in Cook county outside the city of Chicago on which taxes were to be extended were 566,952 in number, on 441,312 of which the taxes had been extended and entered in the books and the books containing those entries had been delivered to the township collectors, who were collecting taxes; that the items of personal property on which taxes were to be extended in the county outside the city of Chicago were 79,561 in number, on 74,300 of which taxes had been extended and the books containing those items had been delivered to the collectors and the taxes were in process of collection; that within the city of Chicago the items of real property on which taxes were to be extended numbered 532,252, on 441,312 of which taxes had been extended; that warrants for the collection of a part of the personal property taxes within the city of

Chicago had been delivered by the clerk to the treasurer, upon which $2,012,615.99 of taxes had been collected; that one hundred assessment books containing the 1929 assessments had been delivered by the clerk to the assessors of Cook county, who were entering therein the assessments for the year 1930, and over said books the clerk and treasurer had no control; that any change in the assessment roll for 1929 would necessitate a re-calculation of all tax rates and a re-extension of all taxes; that it would be impossible to use the present tax books for such purpose without erasing the work already done, and it would be impossible to make such erasures and re-enter the assessments for 1929 without great delay and confusion; that unless the existing books were used new books would be required and it would take at least four months to obtain them; that if a re-extension of taxes became necessary it would take at least six months to bring the work on the tax books to the point where it was; that the appropriation made by the county board of Cook county for the work of preparing the tax books had been largely consumed and if the work should be done over there would be no funds for such work; that practically all of the taxing bodies of Cook county pay their current operating expenses from proceeds of loans on tax anticipation warrants; that Cook county, and the various taxing bodies thereof, in 1929 borrowed approximately $122,000,000 on warrants issued in anticipation of the taxes for 1929, and in 1930 approximately $122,000,000 on warrants issued in anticipation of the taxes for 1930; that said warrants, and interest thereon amounting to approximately $40,000 a day, could not be paid until the taxes for 1929 and 1930 were collected; that the taxing bodies of Cook county were confronted with the necessity of raising funds to defray current expenses, which could be raised only by the sale of warrants issued in anticipation of the collection of 1931 taxes, and the sale of such warrants would be attended with great difficulty because the

tax anticipation warrants for 1929 and 1930 were still outstanding; that it would be impossible to sell such 1931 tax anticipation warrants unless the payment of the 1929 tax anticipation warrants was promptly made, and that the granting of the writ of *mandamus* as prayed for in the petition of relators would delay the collection of the 1929 taxes for a long period of time, so that the various taxing bodies of Cook county would be unable to meet current expenses and there would be created great public confusion and disorder.

By its answer the board of review admitted that a written complaint as to the assessment of his real estate was filed in duplicate with the board by each of the relators on the form prescribed by the board for such complaints, and that such complaints were filed within the time specified for the filing of complaints before it as to the assessment of real estate for 1929; that approximately 40,000 complaints as to the assessment of real estate for the year 1929 were filed with the board and that as to many of the complaints no hearing was granted, and the relators made a written demand on the board for hearings on their complaints and that it set a date for such hearings. In the answer it was denied that it was the duty of the board to give to each complaining tax-payer a hearing on his complaint, and it was alleged that the board reviewed, revised and corrected the assessments of real estate as made by the board of assessors for the year 1929 and granted a hearing to all complainants entitled by law to such hearing; that every tax-payer was entitled to a hearing before the board of assessors as to the valuation fixed on his property by that board; that as to every complaint filed before it the board of review had full information given it by the complaining tax-payer as set out in the complaint filed before it, and also had the complete findings of the board of assessors so that the board of review could review, revise and correct the assessment of every complaining tax-payer; that the assessment books were not delivered to the board of review until on or

about November 17, 1930, and said board on or about January 31, 1931, began to deliver the books to the county clerk, and the last of the books were delivered to the clerk on February 13, 1931; that the needs and requirements of the local and county governmental bodies in Cook county made it necessary that the board of review deliver the assessment books to the county clerk at the earliest possible date, and that the inability of the board to hear all the complaints filed before it was caused by the financial exigencies of the various taxing bodies in Cook county and the short length of time the assessment books were before the board. In the answer it was also alleged that the board of county commissioners of Cook county had adopted a resolution which provided that in any action, suit or proceeding brought to collect real estate taxes for 1929 or to resist the collection of such taxes, neither the county nor any of its officers should raise the point that the tax-payers had failed to prosecute their complaints to hearing before the board of review; that the resolution further provided that in any and all such actions, suits or proceedings it should be stipulated as a fact that the board of review purported to hear the complaints of the tax-payers but refused to permit the introduction of any evidence or to hear any argument on behalf of the tax-payers and denied the relief asked for in the complaints filed before that board; that by virtue of the resolution the legal rights of the relators would be as fully protected as if hearings had been granted by the board of review on their complaints. It was further alleged that there was a misjoinder of parties plaintiff, as thirteen relators could not join in one proceeding for a writ of *mandamus* when each relator has a separate and distinct right.

It is stated in the brief filed by appellants that replications were filed by the relators to the answers of appellants, but no replication is shown in the transcript of record filed in this court, and the record certified as complete imports

verity. On the hearing it was admitted by appellants that the board of review had not granted a hearing to any of the relators on their complaints filed with it, and that on February 13, 1931, the board delivered the last of the assessment books to the county clerk.

Two witnesses testified at the hearing. One of these witnesses, an employee of the board of assessors of Cook county, testified as to the time when the assessment books were delivered to the board of review, and the other witness, a court reporter, testified to statements made by one of the members of the board at a meeting of the board on February 3, 1931.

The first contention of appellants is that there is a misjoinder of relators because the right of each relator which it was sought to have enforced by the writ of *mandamus* is a separate and distinct right independent of the right of the other relators. Appellees reply to this contention by insisting that there is no misjoinder, and by also saying that appellants waived the right to raise that objection to the petition by answering after the demurrer to the petition on that ground had been overruled.

A *mandamus* proceeding is an action at law and is usually governed by the same rules of pleading that are applicable to other actions at law. (*Dement* v. *Rokker,* 126 Ill. 174.) In the third and last edition of High on Extraordinary Legal Remedies, published in January, 1896, it is stated (sec. 439) as the law in petitions for *mandamus:* "When the interests of several relators seeking redress by *mandamus* are separate and independent they cannot join in one and the same writ but should have separate writs, according to their several interests." The cases cited by the author to support that statement are all English common law cases, except the case of *Hoxie* v. *Commissioners of Somerset,* 25 Me. 333, in which the relators sought the payment of two different sums of money, and there was no identity in the facts concerning those claims. None of those

cases are on a parity with the facts in the case now before us. It has been held by the courts of last resort in a number of the States of this country, that several relators may properly join in an application for the writ where they have no joint interest in the right sought to be enforced and the right of each relator is the same as the right of all the other relators. In *Hughes* v. *Outlaw*, 197 Ala. 452, 73 So. 16, a number of parents were permitted to join in a petition for writ of *mandamus* against a public school teacher to compel the teacher to receive their children as pupils without the payment of tuition, and it was held that the objection of misjoinder of petitioners was not well taken. A similar holding was made in the case of *Board of Education* v. *State*, 222 Ala. 70, 131 So. 239, in which the court said: "Relators have a community interest in the subject matter and proceeded in the same right and are properly joined as petitioners." The Supreme Court of Indiana in *Shira* v. *State*, 187 Ind. 441, 119 N. E. 833, and in *State* v. *Morris*, 199 id. 78, 155 N. E. 198, overruled the objections that there was a misjoinder of the relators, and held in the first case that several police officers might join in a *mandamus* petition to be restored to their positions, and in the second case, that several firemen might properly join as relators in *mandamus* to compel the enforcement of a statute for the division of fire departments into day and night platoons. In *State* v. *Jaudon*, 286 Mo. 181, 227 S. W. 48, the Supreme Court held that six tax-payers could legally be joined as relators to compel the city of Kansas City and its treasurer to accept as full payment of their taxes the sums which would have been due in the absence of an illegal twenty per cent increase in the assessments and overruled the objection that there was a misjoinder of relators. In *State* v. *State Tax Collector*, 39 La. Ann. 530, 2 So. 59, and in *State* v. *Shakespeare*, 43 id. 92, 8 So. 893, the Supreme Court of Louisiana held in the first case that 120 tax-payers, owners of separate and distinct properties, could

legally join in a *mandamus* suit to compel the tax assessors to correct and amend the assessment rolls and to compel the tax collector to collect the taxes on the basis of the amended tax rolls. The court held in the second case that four members of the board of police commissioners could legally join in a single *mandamus* petition to compel the mayor of New Orleans to restore them to office.

Holdings similar to those made in the foregoing cases with reference to the permitting of a number of relators to be joined in *mandamus* proceedings have been made in other States in the following cases: *Lehman* v. *Pettingell,* 39 Col. 258, 89 Pac. 48; *Independent District No. 2* v. *Rhodes,* 88 Iowa, 570, 55 N. W. 524; *Hammar* v. *Covington,* 3 Metc. (Ky.) 494; *People* v. *Board of Supervisors,* 85 N. Y. 323; *State* v. *Kendall,* 44 Wash. 542, 87 Pac. 821 ; *Payne* v. *Staunton,* 55 W. Va. 202, 46 S. E. 927; *State* v. *Buech,* 171 Wis. 474, 177 N. W. 781.

It does not appear that any case has been presented to this court for decision that is on all-fours with the one now presented for our consideration. However, in the case of *People* v. *Webb,* 256 Ill. 364, (a *mandamus* proceeding on the relation of a resident and tax-payer of Chicago against the board of review of Cook county to compel it to list for taxation certain omitted personal property for the years 1905, 1906, 1907, 1908, 1909 and 1910 owned by sixty persons residing in Cook county,) the superior court sustained the contention of the board of review that the duty to assess the omitted property belonging to one person constituted a cause of action and that one petition and one writ of *mandamus* could not be employed to compel the board to assess the omitted property of all of the sixty tax-payers, and sustained the demurrer of the board to the petition on those grounds. On appeal this court refused to sustain the contentions of the board, reversed the judgment of the superior court and remanded the cause, with directions to overrule the demurrer to the petition. This court stated in

its decision, in substance, that a decision by it sustaining such contention of the board would be a reproach to the judicial procedure of the State.

The facts appearing in the record in the case now before us are, that the complaints of the relators filed with the board of review are separate complaints as to the assessments of real estate owned by the relators separately. The only relief sought in this proceeding, however, is a hearing before respondents. Such a hearing is a matter of right given to all property owners by the statute. It is therefore a right common to all property owners. No good reason appears, therefore, why these thirteen relators may not join in one petition for *mandamus* to procure that right. This court does not, of course, pass upon the rights claimed by the property owners in their objections filed before the board of review, nor did the superior court attempt to do so but directed that relators be given a hearing on their objections according to law.

Appellants also contend that it is not a mandatory duty of the board of review to grant a hearing to every tax-payer who files a complaint before it of the assessment of his property although he in good faith files such a petition for the correction of the assessment. Section 34 of the Revenue act of 1898 as amended provides that the board of review shall meet each year for the purpose of revising the assessment of property, and at such meeting, upon application of any tax-payer, or upon its own motion, may revise the entire assessment, or any part thereof, of any tax-payer and correct the same as shall appear to it to be just. Section 35 of said act as amended provides that on "complaint in writing that any property described in such complaint is incorrectly assessed, the board shall review the assessment, and correct the same, as shall appear to be just," and that "complaints relating to real estate shall be considered by towns, and complaints relating to personal property shall be heard in their order by classes, in pursuance of

the order of the board, heretofore mentioned, until all complaints have been heard and passed upon by the board." Said section further provides that upon any hearing of a complaint the board of review shall sit together and hear the representations of the parties interested or their representatives. These provisions of the statute imposed the duty upon the board of review to grant a hearing to each of the relators in this case upon his complaint filed with that board. (*Beidler* v. *Kochersperger,* 171 Ill. 563; *Loewenthal* v. *People,* 192 id. 222.) The cases cited arose under the Revenue act of 1872, and it was held that by section 97 of that act the duty was imposed upon the county board to hear and determine all complaints of assessments of property filed before it. By sections 34 and 35 the same duty is imposed upon the board of review by language even more explicit than that used in section 97 of the Revenue act of 1872.

It is finally contended that the court, in its discretion, should have refused to issue the writ because of the facts alleged in the answer filed by the county clerk and county treasurer, which show that the issuance of the writ would cause great public confusion and disorder. No evidence was introduced to prove the facts alleged in the answer of the county clerk and county treasurer, and it does not appear that those facts were admitted by the relators. Furthermore, what is commanded by the writ is that only the thirteen relators be given a hearing before the board of review. The petition was filed on February 13, 1931, ten days after the board of review announced that no further hearings would be granted on complaints filed with it, and the case was heard on April 10, 1931. It therefore appears that the relators were diligent in filing and prosecuting their suit. Moreover, it clearly appears from the answer of the appellants to the petition for *mandamus* that every one of the relators had individually applied to the board of review in the manner required by the board for a hearing, asking for

a correction of his assessment, which he alleged to be incorrectly imposed. On those individual complaints it was the duty of the board to grant each one of the relators a hearing without any further action on the part of such relators except to appear before the board at such time as it should indicate and introduce their evidence to substantiate their complaints, if they had such evidence. They were denied such right by the board, although it was its duty as a public body to grant such hearings. The superior court was therefore justified in its holding that the relators had the absolute right to a hearing by the board before the petition for *mandamus* was filed, and that the board had refused to grant such right and grant such hearing, which the law made it the public duty of the board to do. The relators showed a clear legal right and a failure by the board of review to recognize that right and perform a duty imposed upon it by law. The board introduced no evidence to support its answer except as heretofore stated. It is very apparent that the descriptions of the property of the thirteen relators aforesaid can all be found in a very few volumes of the one hundred assessment books containing the 1929 assessments, and that it should not be a very difficult proposition for the board of review to obtain correct abstracts of the assessments of the relators' property upon which they have asked the board of review to grant a hearing for the correction of the 1929 assessments, and for correction of the same if the relators shall be entitled to such correction. The superior court did not err in awarding the writ of *mandamus*.

At the June term, 1932, of this court, after this case had been taken under advisement, a motion was made by Edward R. Litsinger and Edward J. Hughes, "as former members of the late board of review of Cook county," to dismiss the appeal in this case on the ground that that board had been abolished by law. By an act of the General Assembly in force February 13, 1932, the Revenue act

of 1898 was amended and section 32*a* was added thereto, by which it is provided: "In counties containing two hundred fifty thousand or more inhabitants a board of appeals consisting of two members is hereby created and established. *  *  * Such board of appeals shall be the successor of the board of review in such counties containing two hundred fifty thousand or more inhabitants and immediately upon the appointment and qualification of the first members of such board of appeals, as hereinbefore provided the board of review in such counties shall deliver up to the county assessor all the books, papers, maps, plats, lists and other records of their office and thereupon such board of review shall be abolished and cease to exist." (Laws of 1931-32, sec. 32*a,* p. 73, 57th General Assembly.) "No hearing upon any complaint shall be held until the person or corporation affected and the assessor who certified the assessment have each been notified and given an opportunity to be heard thereon. The hearing upon any such complaint shall be open to the public and the board of appeals shall sit together and hear the representations of the parties interested or their representatives and no order for a correction of any assessment shall be made unless both members of said board concur therein and, in such case, an order therefor shall be made in open session and entered of record on the books of the board." (Ibid. sec. 35*b,* p. 79.) The board of appeals being the successor of the board of review, the judgment of the superior court in this cause is binding upon the board of appeals, and it is its duty, in complying with that judgment, to act upon the original complaints which were made to the board of review, and in so doing act in compliance with the provisions of the law above cited.

The judgment of the superior court is affirmed.

*Judgment affirmed.*

DUNN and DEYOUNG, JJ., dissenting.