FLORENCE FERN MURPHY, appellee, v. C. E. ADAMS, d/b/a A & F HOME BENEVOLENT ASSOCIATION, appellant.

No. 50417.

NOVEMBER 14, 1961.

Darling & Armknecht, of Winterset, for appellant.

Webster, Frederick & Jordan, of Winterset, for appellee.

SNELL, J.—This is an action by Florence Fern Murphy, plaintiff-appellee, as surviving widow of Elmer B. Murphy, de-

ceased, to recover the sum of $999 which she claims is due her under the terms of a written instrument issued by A & F Home Benevolent Association, defendant-appellant. The evidence is meager and the facts are not in material dispute.

The A & F Home Benevolent Association is an unincorporated, unlicensed and apparently unsupervised association owned by defendant, C. E. Adams, ostensibly designed to provide low-cost burial benefits for the members of the association. Memberships are sought by the defendant. Members contribute an initial membership fee, an annual expense contribution, and upon the death of any member each survivor contributes $1.35 to the association. From each contribution 35 cents is retained by the defendant for operating costs and $1.00 is paid to the heir or heirs designated by the deceased member.

Except for Mr. Adams, who acts as treasurer, the association has no officers. There are no articles nor bylaws. Except for an application for membership, there are no written agreements. In the case before us there is no evidence except as indicated.

On May 1, 1958, Elmer B. Murphy became a member of the association through an instrument in writing, reading as follows:

"The A & F Home Benevolent Association

401 EAST JEFFERSON

WINTERSET, IOWA

| PLAN I | PLAN II | PLAN III | FAMILY PLAN |
|--------|---------|----------|-------------|
| AGE 0 - 30 | AGE 30 - 55 | AGE 55 - 75 | |

LOW COST PROTECTION IN TIME OF NEED

| Family Members | Birth date | APPLICANT | PLAN | UNIT |
|----------------|------------|-----------|------|------|
| Elmer Boyd Murphy | 9–11–92 | Name: Elmer Boyd Murphy | 3 | 1 |
| Florence Fern Murphy | 2–9–93 | Address: Truro, Iowa | | |
| | | Box 83 | | |
| | | HEIR OR HEIRS | | |
| | | Name: each other | | |
| | | Address: | | |

### How the Plan Works:

1. In the event of any death by a group member, help is furnished to the named heir or heirs, by contribution from each member of the deceased's group. The basis of the plan is to help ones self and his friends in a time of need by making benefit fund immediately available.

2. All members are formed into groups of 1000 each, according to age. Group members agree to make a contribution of $1.35 to the Association within 30 days after being notified of the death of a member of his own group $1.00 of each contributing member goes immediately to the heir or heirs designated by the deceased. MAXIMUM BENEVOLENT FUND TO A DECEASED'S HEIRS IS THEREFORE $1,000.00.
The balance of each contribution goes for operating costs of the Association.

3. Failure of a member to make contributions as called shall cancel his membership.

4. The only additional contributions are initial membership contribution and annual expense contribution as set out below.

5. All representatives of the Association are fully bonded.

CONTRIBUTIONS — These are members' ONLY costs:

I. Initial membership contribution:
   —Individual ....................................................................$ 7.50
   —Husband and Wife ..................................................... 12.00
   —Family Plan (to include husband, wife and all
                  children at home up to age 18).... 15.00

II. Annual Expense contribution, per person AFTER
   first year ......................................................................... 2.00

III. Death benefit contribution, upon death of a member of YOUR OWN GROUP ONLY ..................................... 1.35

I hereby apply for membership in the A & F Home Benevolent Association, for myself and such other family members as are shown above.

Dated this 1 day of May, 1958.

/s/ Elmer B. Murphy
Applicant

Received of Mr. Elmer B. Murphy, $12.00 initial membership contribution as per the above.

Dated this 1 day of May, 1958.

A & F HOME BENEVOLENT ASSOCIATION

By /s/ Kenneth E. Roseland

THE ORIGINAL OF THIS APPLICATION TO BE KEPT BY THE APPLICANT—Thank you very much."

Mr. Murphy made the payments necessary to remain in good standing. He died on February 18, 1960. At that time there were 141 members in his group. Notices were sent to the members and 135 responded by making payment. The defendant tendered $135 to Mrs. Murphy, the plaintiff herein. Mrs. Murphy has demanded the sum of $999 and has refused to accept the $135 tendered in satisfaction of the defendant's obligation.

The trial court found for plaintiff and rendered judgment against defendant in the sum of $999, together with interest and costs. We cannot find evidence in this record to support this judgment.

I. Defendant-appellant filed no motions for directed verdict, for judgment notwithstanding the verdict, for new trial nor for enlargement of findings. Appellee now argues that without such procedure no appealable question has been preserved for presenting to us. We do not agree.

This is a law action. The trial court's findings have the effect of a special verdict. Rule 334, Rules of Civil Procedure; Staley v. Fazel Bros. Co., 247 Iowa 644, 75 N.W.2d 253. However, rule 179, Rules of Civil Procedure, provides: "But a party, on appeal, may challenge the sufficiency of the evidence to sustain any finding, without having objected to it by such motion or otherwise." Beardsley v. Hobbs, 239 Iowa 1332, 1335, 34 N.W.2d 916, 917, says: "Under rule 179, Rules of Civil Procedure, it is clear defendants have the right, upon appeal, to challenge the sufficiency of the evidence to sustain the questioned findings."

■ II. The trial court commented, "This 'plan', contract or policy, or whatever name one may wish to designate it, is perhaps more interesting in what it does not contain than what, in fact, it does state." The weakness in plaintiff's case lies in the fact that there are no words in the writing in any way obligating the defendant to pay the sum sought.

The appellant assigns two errors relied on for reversal. They are so closely related that they have been consolidated for argument and will be considered together. The appellant urges that the trial court erred in finding that the contract was ambiguous and erred in applying rules of construction as to ambiguous contracts for the reason that there was no ambiguity.

It should be noted that nowhere in the written instrument is there any promise by defendant to pay or do anything. Paragraph 1 of the plan says that in the event of any death by a group member, *help is furnished by contribution from each member of the deceased's group.* (Italics supplied.) Paragraph 2 provides for the forming of members into groups of 1000 each, according to age, but we find nothing that says that the defendant will supply any deficit if there are less than 1000 members. The paragraph also provides that group members agree to make a contribution of $1.35 each after being notified of the death of a member of his own group, $1.00 of each contributing member going immediately to the heir or heirs designated by the deceased. There would, of course, be an obligation upon the part of the treasurer of the group to remit funds so collected, but there is nothing obligating the treasurer or the owner or manager of the fund to remit more than is collected. In capital letters the paragraph then provides: "MAXIMUM BENEVOLENT FUND TO A DECEASED'S HEIRS IS THEREFORE $1,000.00." On the basis of these provisions the plaintiff-appellee urges that there is an ambiguity that should be construed in favor of the plaintiff and that the defendant should be required to remit $999. This amount is obviously computed by assuming that there should have been 1000 members with 999 surviving after the death of Mr. Murphy. The weakness in this calculation is in the fact that there were not 1000 members.

Webster's New International Dictionary defines the word

"maximum" as a noun meaning "The greatest quantity or value attainable in a given case; or, the greatest value attained by a quantity which first increases and then begins to decrease;—opposed to minimum." As an adjective it is defined as "Greatest in quantity or highest in degree attainable or attained." Under these definitions it is clear that the application for membership stated that the most that could be received in any event would be $1000, but there is absolutely no intimation that such an amount would be paid in any event. Volume 26A, Words and Phrases, beginning on page 382, annotates a number of situations defining the word "maximum" in the same way.

Except for the writing itself, there is nothing before us to aid in any way. The writing itself places a limit upon the amount that could be available upon the death of a member, but there is no assurance whatsoever that any particular amount would be paid. There is no such ambiguity as claimed by plaintiff nor any construction that will support plaintiff's claim.

The word "ambiguous" is defined in Webster's New International Dictionary as "Capable of being understood in either of two or more possible senses; equivocal." It is also defined as "Doubtful or uncertain, especially from obscurity or indistinctness." The writing now before us leaves doubt as to the amount that is actually recoverable under the maximum limitation, but it is clear that the benefits depend upon the number of contributing members.

It is plaintiff-appellee's contention that the sentence "All members are formed into groups of 1000 each, according to age," constitutes an obligation on the defendant-appellant to obtain and maintain groups of 1000. With this contention we cannot agree. Such a contention requires the reading into the entire agreement statements and obligations that are not there.

It is true that benevolent association contracts have been considered under the same rules as insurance policies and that the familiar rules of constructions in favor of the insured and against the insurer have been applied. The cases so holding are not applicable here for the reason that there is neither ambiguity nor sound theory of construction under which the plaintiff is

entitled to recover more than was collected from the members of the association group.

The case is reversed and remanded to the district court for the entry of judgment in favor of the plaintiff and against the defendant in the sum of $135, together with interest thereon at the rate of five per cent per annum from February 18, 1960, to October 21, 1960, and for costs up to the 21st day of October 1960, the date of defendant's offer to confess judgment.—Reversed and remanded.

All JUSTICES concur except BLISS, J., not sitting.