Ben L. COLLINS, Appellant,

v.

PARSONS COLLEGE, Appellee.

No. 55126.

Supreme Court of Iowa.

Jan. 17, 1973.

Meardon, Sueppel & Downer and Clair E. Hamilton, Iowa City, for appellant.

Bailey C. Webber, Ottumwa, for appellee.

Heard before MOORE, C. J., and Le GRAND, REES, UHLENHOPP and HARRIS, JJ.

UHLENHOPP, Justice.

This appeal involves the enforceability of an employment agreement between a teacher and Parsons College.

Ben L. Collins holds bachelor and master of arts degrees and a doctor of philosophy degree. He studied at Harvard University in addition and taught for a number of years. In the spring of 1966 he was a full professor with tenure at Wisconsin State University at Whitewater.

In March of 1966, Collins was invited to confer with Dr. W. B. Munson, vice president for academic affairs of Parsons College. Collins testified that the following transpired at that conference:

> Dr. Munson asked me to his office and told me he was prepared to offer me a contract for $25,000.00, that he would give me the rank of full professor and that I would be on full tenure.

Further regarding the conference, Collins testified concerning salary increments:

> Yes, he told me there would be annual increments of $1,000.00 per year until I reached $30,000.00 in 1971.

The college introduced no evidence contradicting Collins' testimony about the conference.

Munson tendered Collins a written contract for the first year incorporating the terms stated at the conference. Collins was to teach two trimesters in the academic year beginning October 1, 1966, at a salary of $25,000, with the academic rank of "Professor of English and Humanities with tenure." The contract covered the 1966–1967 school year and incorporated Parsons' faculty bylaws by reference. The last two paragraphs of the contract stated:

> 4. You are hereby placed on tenure.
>
> 5. You will receive annual increments of $1,000.00 to the level of $30,000.00 by 1971.

The faculty bylaws provided in part:

> The service of a Faculty member on permanent tenure shall be terminated before retirement or his rank reduced only for just cause. Charges which may lead to the dismissal or reduction in rank of Faculty members with permanent tenure shall be made in writing through the Professional Problems Committee whose recommendation will be presented to a meeting of the tenured Faculty.

(The parties do not make a point of the use of the expressions "permanent tenure" in the bylaws and "tenure" in the agreement, and we do not believe Munson was trying to trick Collins by using the words "full tenure" rather than "permanent tenure." Other parts of the bylaws and the correspondence show "tenure" and "permanent tenure" used interchangeably.)

After considering the offer of the college, Collins accepted it and gave up his teaching position in Wisconsin. He signed the contract covering the first year and Munson signed it on behalf of the college.

Collins taught during the 1966–1967 academic year pursuant to the contract. That year he was also appointed head of the English department.

In February 1967, Parsons tendered Collins a contract covering the 1967–1968 academic year, and he signed it. That contract also followed the original agreement. His rank was "Professor of English and Humanities with tenure," his salary was $26,000, and the contract again stated, "You will receive annual increments of $1,000.00 to the level of $30,000.00 by 1971."

In February 1968, however, Collins was tendered a different contract, to cover the following year. He was still to have the rank of "Professor of English with tenure," but at a salary of $15,000 with no provision for increment. The tendered contract also stated:

> By accepting this contract, the Faculty member agrees that it shall constitute the only contract of employment with the College for the period set forth above and that he waives any rights or claims arising from any other contract of employment with the College, save and except any rights he may have to any unpaid salary or fringe benefits for service performed by him under any previous contract with the College.

The proposed salary of $15,000 was comparable to that then offered other professors.

Collins did not sign this contract and in due course the college notified him that he would not be employed the following year. He desired to teach at the college under the original agreement, but in view of the action of the college he sought employment elsewhere. He secured a position at the University of North Dakota and taught there at a salary of $15,000 for the academic year commencing in the fall of 1968, $15,800 commencing in 1969, $16,400 com-

mencing in 1970, and $16,700 commencing in 1971.

No one suggests that Collins did not perform his work properly at Parsons College or that the college had grounds to discharge him or to depart from the original agreement. No written charge was made against him before the tenured faculty, or before anyone else for that matter.

In Collins' present action against the college, he asks as damages the difference between the amount he was promised by the college to 1971 and the amount he was able to earn elsewhere. The trial court tried the case by ordinary proceedings without a jury and held for the college. The controlling facts on liability are really uncontroverted. The dispute is over the legal conclusions to be drawn from the facts.

The parties argue a number of points, but we regard two principal issues to be decisive. First, what were the terms of the agreement? Second, was the agreement supported by consideration? The damage issue must also be considered.

I. *Terms of Agreement.* No one can gainsay that an agreement was made and that it was carried out by both sides for the first two years by executing and performing written contracts. What were the terms of the agreement?

The terms as to Collins' performance are clear. He was to teach, and he did so for two years.

The terms as to performance by the college were clear as to the compensation it was to pay—$25,000 per year with annual increments to $30,000 in 1971. The college paid the promised compensation for two years.

The term in controversy is the duration of the promised employment. Collins claims the college promised him a permanent position (at the stipulated salary and increments for the first five years), while the college contends the agreement was terminable by it at will.

We think that two provisions of the agreement, taken together, demonstrate that the promise of the college was not terminable at will if Collins performed or was ready and willing to perform, as in fact he was. The first provision is the one calling for annual salary increments to 1971. This not only fixed the amount of compensation; it also constituted some indication that the parties had in mind the employment would be ongoing, at least to 1971.

The second provision is the one granting Collins tenure. The term "tenure" was employed at the original conference. In his pretrial deposition, Collins related the words of Munson thus: "He said he didn't believe in beating around the bush, that he would offer me $25,000 to teach at Parsons. Then he said, 'Are you a full professor where you are?' I said, 'Yes.' He said, 'You are a full professor here.' He asked, 'Do you have tenure where you are?' I said, 'Yes.' He said, 'You have tenure here. Shall I draw up the contract?'"

The term "tenure" was also employed in the two written contracts carrying out the original agreement—"You are hereby placed on tenure" and "Professor of English and Humanities with tenure."

The word tenure has come to have quite a definite meaning, especially in contracts of teachers in institutions of higher learning. State ex rel. Keeney v. Ayers, 108 Mont. 547, 92 P.2d 306; State ex rel. Richardson v. Board of Regents, 70 Nev. 144, 261 P.2d 515; see Webster's Third New International Dictionary ("a status granted usu. after a probationary period to one holding a position esp. as a teacher and protecting him from dismissal except for serious misconduct or incompetence determined by formal hearings or trial: permanent tenure"). See also Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548.

But we need not base interpretation of this agreement on the meaning of tenure generally, for the faculty bylaws of the

college specifically provided that the service of a tenured faculty member could be terminated only for just cause, on written charges before the tenured faculty. Collins was thus subject to removal only for cause—which is not involved here. We conclude that Collins had an agreement for a permanent position, and at a stated salary to 1971. The case is not governed by decisions involving indefinite agreements, such as Faulkner v. Des Moines Drug Co., 117 Iowa 120, 90 N.W. 585. It falls more nearly within such decisions as Stauter v. Walnut Grove Products, 188 N.W.2d 305 (Iowa).

■ Collins did not waive his right of tenure by executing written contracts carrying out the original agreement in individual years. La Shells v. Hench, 98 Cal.App. 6, 276 P. 377; Spice Valley Township v. Rizer, 214 Ind. 528, 15 N.E.2d 390; State ex rel. Nobles v. Bienville Parish School Bd., 198 La. 688, 4 So.2d 649; Wesenberg's Appeal, 346 Pa. 438, 31 A.2d 151. Moreover, in each of the two written contracts his right of tenure was affirmed.

■ But the college insists that it could terminate the employment at the end of any academic year because Collins had the right to do so. That he had such right cannot be doubted, and indeed he did consider other teaching positions from time to time. The college contends that the promises of parties must be mutually obligatory to make an agreement enforceable. This contention of the college brings us to the second principal issue, consideration.

■■ II. *Consideration.* We have considerable doubt that an agreement for tenure such as this one requires mutuality in any event, *as to duration of the employment.* Tenured teachers·in institutions of higher learning have permanent positions as spelled out in the bylaws of their institutions, just as civil servants have permanent positions as spelled out in statutes. Yet such teachers and servants are free to resign if they wish. But a different situa-

tion exists *as to compensation to be paid.* This case presents both the duration and compensation aspects.

■ We do not place the decision, however, on the issue of whether mutuality is required in the case of tenured positions such as the present one. The contention of the college that mutuality of obligation is essential is not strictly an accurate statement of the law. Promises must be mutually obligatory if they constitute the only consideration for each other. But if a promise is supported by other consideration, it is enforceable although the promisee has the right to terminate his undertaking or indeed makes no promise at all, as in the case of unilateral contracts. Speaking for the court, Judge Evans stated the principle thus in Standard Oil Co. v. Veland, 207 Iowa 1340, 1343, 224 N.W. 467, 469:

> If the lack of mutuality amounts to a lack of consideration, then the contract is invalid. But mere lack of mutuality in and of itself does not render a contract invalid. If mutual promises be the mutual consideration of a contract, then each promise must be enforceable in order to render the other enforceable. Though consideration is essential to the validity of a contract, it is not essential that such consideration consist of a mutual promise. A promissory note for a consideration is valid, though no mutuality appear thereon. This is true of all unilateral contracts which are supported by a consideration.

See also Des Moines Blue Ribbon Distributors v. Drewrys Limited U.S.A., 256 Iowa 899, 129 N.W.2d 731.

The question before us, then, becomes one of consideration. Collins did not promise to serve permanently or even until 1971, and so we have no promise from him in exchange for the promise of the college to employ him permanently at a specified salary with increments to 1971. Did he provide other consideration?

■ Collins points to his surrender of his tenured position at Wisconsin State University to accept this position, to the knowledge of Parsons College. The evidence shows that he had good academic credentials as well as experience in teaching, and evidently the college believed he would be a valuable addition and would lend stature to its staff. The college appeared eager to get him and was aware that he was surrendering a secure position to accept its offer. Once Collins left Wisconsin, he lost his tenure there. Did his surrender of that position constitute consideration for the agreement of Parsons College?

Courts are divided on such a question, some holding yes and some no. 53 Am. Jur.2d Master & Servant § 33 at 108–109; 56 C.J.S. Master & Servant § 6 at 64, 70–71; Annot., 135 A.L.R. 646, 669–673. This court has adverted to the question but does not appear to have decided it squarely. Stauter v. Walnut Grove Products, 188 N. W.2d 305 (Iowa); Hanson v. Central Show Printing Co., 256 Iowa 1221, 130 N. W.2d 654; Lewis v. Minnesota Mut. Life Ins. Co., 240 Iowa 1249, 37 N.W.2d 316. Some courts hold the surrender of employment to take a new job constitutes consideration if the new employer is aware that the employee is giving up the other position. Alabama Mills v. Smith, 237 Ala. 296, 186 So. 699; Millsap v. National Funding Corp., 57 Cal.App.2d 772, 135 P.2d 407. Generally consideration may, of course, consist of a detriment to the promisee. 17 Am.Jur.2d Contracts § 96 at 438; 17 C.J.S. Contracts § 70 at 747. Consideration need not move to the promisor. Restatement, Contracts § 75, Comment *e* ("It matters not from whom the consideration moves or to whom it goes.").

■ After considering the question, we think the better rule to be that an employee who gives up other employment to accept an offer of a permanent job provides independent consideration—at least, when as here the employment surrendered was itself permanent and the new employer is aware of the facts. Littell v. Evening Star Newspaper Co., 73 App.D.C. 409, 120 F.2d 36; Riefkin v. E. I. du Pont de Nemours & Co., 53 App.D.C. 311, 290 F. 286; Alabama Mills v. Smith, 237 Ala. 296, 186 So. 699; Millsap v. National Funding Corp., 57 Cal.App.2d 722, 135 P.2d 407; Kirkley v. F. H. Roberts Co., 268 Mass. 246, 167 N.E. 289; Heaman v. E. N. Rowell Co., 236 App. Div. 34, 258 N.Y.S. 138, approved but rev'd on other grounds, 261 N.Y. 229, 185 N.E. 83; Jones v. Carolina Power & Light Co., 206 N.C. 862, 175 S.E. 167; Roxana Petroleum Co. v. Rice, 109 Okl. 161, 235 P. 502; Weber v. Perry, 201 S.C. 8, 21 S.E.2d 193. See also Fletcher v. Agar Mfg. Corp., 45 F.Supp. 650 (W.D.Mo.); Lucacher v. Kerson, 158 Pa.Super. 437, 45 A.2d 245; Kiser v. Amalgamated Clothing Workers of America, 169 Va. 574, 194 S.E. 727.

The result is that the college agreed to employ Collins permanently and at the salary and increments promised to 1971, and that Collins provided consideration for the agreement of the college.

■ No question can exist about the breach. The college did not go forward with the agreement after the second year but, instead, tendered a contract providing substantially reduced salary and requiring Collins to give up his existing contract rights. When he did not accept, he was not further employed.

III. *Damages.* The case was fully tried on liability and damages and no necessity exists to retry it. On remand, the district court is to consider the evidence on damages adduced at the original trial, find the amount of damages accordingly, and render judgment for Collins therefor, together with interest and costs. See Busker v. Sokolowski, 203 N.W.2d 301 (Iowa). As to the measure of damages, see Shill v. Rock Creek School Twp., 209 Iowa 1020, 227 N.W. 412; Byrne v. Struble Independent School Dist., 139 Iowa 618, 117 N.W. 983; 47 Am.Jur. Schools § 145 at 402; 78 C.J.S. Schools & School Districts § 216 at 1123, 1125.

Reversed and remanded with directions.