Gary MOODY,
Plaintiff-Appellee—Cross-Appellant,

v.

R. A. BOGUE and Hi-Way Products,
Inc., Defendants-Appellants—Cross-
Appellees.

No. 2–65283.

Court of Appeals of Iowa.

June 30, 1981.

James R. Swanger and David H. Goldman of Rogers, Phillips & Swanger, Des Moines, for defendants-appellants—cross-appellees.

Thomas L. McCullough of the McCullough Law Firm, Sac City, for plaintiff-appellee—cross-appellant.

Heard by OXBERGER, C. J., and DONIELSON, CARTER and JOHNSON, JJ.

PER CURIAM.

Defendants, R. A. Bogue and Hi-Way Products, Inc., appeal from a judgment awarding plaintiff, Gary Moody, damages for breach of an oral employment contract. Defendants assert (1) there was no substantial evidence to support trial court's finding that defendants failed to notify plaintiff of intended reductions in compensation in advance of the actual reductions; (2) since defendants did so notify plaintiff, the employment contract was effectively modified; (3) plaintiff, by continuing to work for defendants in 1977, after receiving reduced compensation, consented to the reductions in bonus amounts; (4) the stated amount of each bonus was contingent upon plaintiff doing a good job, and this determination was within the sole discretion of the employer; and (5) it was error to hold Bogue individually liable because the sole employer was the corporation. Plaintiff, in his cross-appeal, contends trial court erred in determining that there was no independent consideration sufficient to support a lifetime employment contract. Plaintiff also contends that defendants raised the issue of modification for the first time on appeal. We affirm in part and reverse in part.

In 1969, defendant Bogue left the employ of Pittsburgh-Des Moines Steel Company to take a job with GOMACO in Ida Grove. A supplier of Pittsburgh-Des Moines Steel learned that Bogue was leaving that company and asked him to become its distributor. Bogue and a major shareholder of GOMACO (Godbersen) decided to form a partnership to distribute aluminum handrails and possibly structural steel for such supply companies. Bogue approached plaintiff, a draftsman in the bridge sales department of Pittsburgh-Des Moines Steel and offered him a job overseeing the new material supply business. Bogue offered Moody a salary of $9,000 per year, which

was more than his salary at Pittsburgh-Des Moines Steel, plus a bonus of 10% of the pre-tax profits. Moody accepted the offer and commenced working for the new business, Hi-Way Products, on December 1, 1969. The business was untried and speculative, but Moody was told that the employment would be permanent and ongoing. Moody sold his house in Des Moines, his wife quit her $5,000 per year job, and they moved to Ida Grove. Subsequently, Bogue purchased Godbersen's interest and, in October, 1970, asked Moody if he wanted to come along with Bogue and Hi-Way Products. Moody, having failed to induce Bogue to enter into a 50–50 partnership with him, came to work as an employee of Bogue's business for $750 per month plus 20% of the profits if he continued to do a good job. Bogue incorporated Hi-Way Products on October 1, 1971, with an investment of $10,000 capital. As it turned out, pirating their former employer's business became highly profitable, and Moody's income, salary plus bonus, rose from $10,379.59 in 1970 to $59,849.47 in 1975. In addition to these amounts the company paid over $20,000 into Moody's pension fund.

In 1976, Bogue, as president and owner of the company, purchased a D–X filling station in Ida Grove and assigned the responsibility of overseeing the property and business to Moody. Moody felt that he was already busy enough without having to take on the extra responsibility, but reluctantly proceeded to look after the books and records of the filling station. Bogue loaned $14,500 to the filling station operator without consulting Moody and with the knowledge that the local bank would not make the loan. The operator wrote unauthorized checks, went broke and took bankruptcy before the end of the year. Hi-Way lost $12,000 in the transaction and, in November of 1976, Bogue advised Moody that the $12,000 loss was being deducted from his annual bonus. Moody and his wife were unhappy with the bonus cut and met with Bogue in his office. Bogue said that he was paying too much for the amount of work Moody was doing, that Moody refused to accept management responsibilities, and

that there would be no bonus if he was only going to be a draftsman and a bookkeeper. The business relationship between Moody and Bogue deteriorated during the year of 1977. Bogue continued to find fault with the way Moody was handling his job and, by the end of 1977, advised Moody that the bonus would be $12,533.69, which represented approximately four percent of the company profit before taxes. Moody was dissatisfied and told Bogue that it was not in accordance with their agreement. Bogue replied that if Moody was unhappy with that amount, he would be paid nothing. Bogue gave Moody the bonus check and asked him to hold it for a week or ten days to assist the cash flow in the company account. Moody hesitated and was annoyed. Bogue then told Moody that he thought the only thing Moody was interested in was the money, and that Moody should straighten out his attitude or leave his keys on the desk and depart. Bogue told Moody to think it over and if he wanted to come back to let Bogue know the first of the year. Moody left his keys and cashed the bonus check. His last day on the job was December 14, 1977.

Moody subsequently wrote to Bogue expressing his willingness "to continue working for you and the company as in accordance with our agreement and bargain" and making a demand for the amounts he believed were owed him for 1976 and 1977. When Bogue did not respond to this letter, Moody filed suit for breach of contract. On May 23, 1980, trial court determined that there was no enforceable lifetime employment contract, but that the plaintiff was entitled to $12,000 for breach in 1976 and $49,201.06 for breach in 1977. This appeal followed.

**I. Scope of Review.** Since this is an action at law, our review is on assigned error only. Iowa R.App.P. 4. Trial court's findings of fact have the effect of a special verdict and are equivalent to a jury verdict; if supported by substantial evidence they are binding upon us and the judgment will not be disturbed on appeal. Iowa R.App.P. 14(f)(1). "A finding of fact is supported by

substantial evidence if the finding may reasonably be inferred from the evidence." *Briggs Transportation Co. v. Starr Sales Co.* 262 N.W.2d 805, 808 (Iowa 1978). The record is reviewed in the light most favorable to the judgment. Ambiguities are construed to uphold rather than defeat the judgment. *Pillsbury Co. v. Ward*, 250 N.W.2d 35, 38 (Iowa 1977). The substantial evidence rule limiting review of a law action tried to the court, however, does not preclude inquiry into whether, conceding the truth of the findings of facts, the conclusions of law drawn therefrom are correct. *Keith v. Community School District of Wilton in the Counties of Cedar and Muscatine*, 262 N.W.2d 249, 255 (Iowa 1978).

■■■ **II. Preservation of Error.** We initially address plaintiff's contention that defendants raised the issue of modification for the first time on appeal and conclude it is without merit. "[Where the] parties proceed without objection to try an issue, even though not presented by the pleadings, it amounts to consent to try such issue and it is rightfully in the case." *Arthur Elevator Co. v. Grove*, 236 N.W.2d 383, 391 (Iowa 1975). We find the issue of modification of bonus amounts was tried to the court below. Evidence was taken, without objection, on whether Moody was informed by Bogue of intended changes in the bonus arrangements; trial court made findings on the issue and drew conclusions of law. The fact that defendant filed no motions for directed verdict, judgment notwithstanding the verdict, new trial, or enlargement of findings does not mean that there are no appealable questions preserved for presentation on appeal. Iowa Civ.P. 179(b); *Murphy v. Adams*, 253 Iowa 235, 111 N.W.2d 687 (1961) (supreme court reviewed sufficiency of evidence to support trial court's finding that a contract was ambiguous, and trial court's consequent error in applying the law pertaining to construction of contracts).

**III. Lifetime Employment Contract.** Plaintiff further argues that trial court erred in determining there was insufficient additional consideration to support a lifetime contract entitling him to recovery of salary after the year 1977. We find no error.

■ Generally, a contract for permanent (as opposed to temporary) employment that is indefinite as to time of duration, and one wherein the employee merely promises to perform services, is terminable at will by either party, with or without cause. *Stauter v. Walnut Grove Products*, 188 N.W.2d 305, 311 (Iowa 1971). *See also Hanson v. Central Show Printing Co.*, 256 Iowa 1221, 1224, 130 N.W.2d 654, 656 (1964); *Lewis v. Minnesota Mutual Life Insurance Co.*, 240 Iowa 1249, 1259, 37 N.W.2d 316, 322–24 (1949); *Faulkner v. Des Moines Drug Co.*, 117 Iowa 120, 122, 90 N.W. 585, 586 (1902). However, where consideration in addition to services is provided by the employee, "a contract for permanent or lifetime employment is valid and enforceable and continues to operate so long as the employer remains in business and has work for the employee once the employee performs competently. [citations omitted]" *Stauter*, 188 N.W.2d at 311. With the additional independent consideration, the contract is enforceable even though the promisee has the right to terminate at any time. *Collins v. Parsons College*, 203 N.W.2d 594, 598 (Iowa 1973). Further, the additional consideration need not move to the employer or promisor. *Id.* at 599.

The cases have not been unanimous in deciding what constitutes legally sufficient additional consideration to support enforcement of a permanent employment contract. *See Bixby v. Wilson & Company, Inc.*, 196 F.Supp. 889, 901–02 (N.D.Iowa 1961) (detriment of moving expenses to the employee was insufficient consideration); *Laird v. Eagle Iron Works*, 249 N.W.2d 646, 648 (Iowa 1977) (giving up employment terminable at will was insufficient consideration); *Hanson*, 256 Iowa 1221, 1229, 130 N.W.2d 654, 659 (giving up opportunity for another job was insufficient consideration).

On the other hand, adequate consideration has been found where a tort claim against the employer was released, *Eggers v. Armour & Co. of Delaware*, 129 F.2d 729

(8th Cir. 1942), where an employee gave up his business to work at the same occupation with an agreement for permanent employment, *Riefkin v. E. I. DuPont de Nemours & Co.*, 53 App.D.C. 311, 290 F. 286, 289 (1923), and where an employee agreed to give up a government job in exchange for other employment, *Carnig v. Carr*, 167 Mass. 544, 547, 46 N.E. 117, 118 (1897).

More recently the Iowa Supreme Court has held that giving up tenured employment is sufficient additional consideration to enforce a permanent employment contract. *Collins*, 203 N.W.2d at 599. In *Rowe v. Noren Pattern and Foundry Co.*, 91 Mich. App. 254, 283 N.W.2d 713 (1979), a union employee's relinquishment of a "virtually secured position and pension for the rest of his life" for a position promising union protection after forty-five days was found to be similar to giving up the tenured position in *Collins* and, therefore, constituted sufficient additional consideration to enforce the contract during the probationary period.

In *Rowe*, as in *Collins*, the employer knew that the employee would not have given up the secured position but for assurance of receiving the same protections in the new job. Thus, both cases came within an exception to the general rule that a contract of indefinite duration is terminable at will. As the Iowa Court stated in *Collins*, 203 N.W.2d at 599:

> ... [W]e think the better rule to be that an employee who gives up other employment to accept an offer of a permanent job provides independent consideration—at least, when as here the employment surrendered was itself permanent and the employer is aware of the facts.

■ In the present case, plaintiff's job with Pittsburgh-Des Moines was terminable at will and thus did not provide sufficient additional consideration. We also believe that the sale of his house in Des Moines was merely incidental to his acceptance of new employment and, although a detriment, is analogous to the moving expenses incurred

by the employee in *Bixby* and not sufficient additional consideration. Further, as plaintiff's wife was not a party to the employment contract, we conclude her employment situation is irrelevant to the issue of consideration between these parties.

■ **IV. 1976 Breach.** In order to sustain trial court's conclusion that the defendant breached the employment contract in 1976 by reducing plaintiff's bonus by $12,-000, it is necessary to find that the terms of the oral contract provided for a fixed twenty percent bonus and not for a flexible percentage up to a maximum of twenty percent, the exact percentage to be determined at the end of each year by the employer according to his subjective evaluation of whether the employee has "continued to do a good job." If the contract were found to provide for the latter, the determination of whether the employee had in fact done a good job would be within the sole discretion of the employer and it would be reversible error for trial court to substitute its judgment for that of the employer.[1] *Stauter*, 188 N.W.2d at 309. *See also Rehmann v. City of Des Moines*, 204 Iowa 798, 215 N.W. 957 (1927); *Scheelhaase v. Woodbury Central Community Sch. Dist.*, 488 F.2d 237 (8th Cir. 1973); 53 Am.Jur.2d Master and Servant § 37 (1970).

■ Defendant testified that the oral contract provided, at most, that plaintiff was to be paid $750 per month, plus up to twenty percent of the profits if he continued to do a good job. Plaintiff, on the other hand, testified that defendant promised him a job for as long as he wanted to work for the company. Based on this conflicting testimony, trial court found the following:

> The evidence establishes a specific agreement as to Moody's compensation while working for Bogue and Hi-Way Products. Their last agreement was $750.00 per month salary plus a bonus of twenty percent of the before-tax profits of the com-

---

1. The court may not pass upon the reasonableness of the employer's dissatisfaction; it may only consider whether the employer's ex-

pressed dissatisfaction is genuine or merely feigned. *Stauter*, 188 N.W.2d at 309.

pany. This agreement was breached by Bogue in the fall of 1976 when he reduced Moody's bonus by the sum of $12,-000.00. The Court finds and concludes that the financial loss from the filling station operation was the result of Bogue's decisions and mismanagement rather than Moody's.

After careful consideration of the record and trial court's findings, we believe trial court was correct in concluding that the defendants breached the contract in 1976. Although trial court's apparent belief that it was also the court's function to judge the employee's performance is erroneous, the court's conclusion that there was a breach is sustainable based on its finding that the parties had a fixed agreement for a twenty percent bonus and that defendant had not paid it. " ... [A] correct conclusion will not be cast aside because of error in reasoning on the part of the trial court. [citations omitted]." *General Casualty Company of Wisconsin v. Hines*, 261 Iowa 738, 749, 156 N.W.2d 118, 125 (1968).

> The appellate court will attempt to harmonize findings of the trial judge and will not read into them unwarranted inconsistency. Even if the findings of the court below are actually irreconcilable, the appellate court may sustain the decision appealed from on the basis of those findings which allow the conclusion by the court below if they are supported by the evidence.

*Id.* (quoting 5 Am.Jur.2d *Appeal & Error* § 844 (1962)). We thus conclude trial court correctly found that defendant breached the contract by reducing plaintiff's bonus by $12,000 in the fall of 1976.

**V. Modification in 1977.** Defendants claim there was no substantial evidence to support trial court's finding that defendants failed to adequately notify plaintiff of a change in the bonus arrangement for 1977. They assert trial court's finding "that Moody was led to believe that the agreement to pay his salary plus the 20% bonus was to continue through 1977 and he continued to do his job much as he had in past years ... [,]" is clearly erroneous in

light of trial court's finding that defendant told plaintiff there would be no more large bonuses if he was only going to be a draftsman and bookkeeper.

■ The law places the burden on defendant to prove by a preponderance of the evidence that a modification took place. *See Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 421–22 (Iowa 1977). The trial court found he had not met his burden. We disagree, even though it is the prerogative of the trial court to determine which evidence is entitled to belief and the appellate court will not weigh or pass on the credibility of witnesses. *DeYarman v. State*, 226 N.W.2d 26 (Iowa 1975); *North Western National Insurance Co. v. Raid Quarries Corp.*, 249 N.W.2d 640 (Iowa 1977). Further, we must consider the evidence in a light most favorable to trial court's judgment, and we need only consider the evidence favorable to the judgment. *Carson v. Mulnix*, 263 N.W.2d 701 (Iowa 1978); *Grefe v. Ross*, 231 N.W.2d 863 (Iowa 1975).

■ It is unnecessary to go beyond trial court's findings to conclude that plaintiff was notified of the intended modification of the contract. Trial court found, and the evidence uncontrovertedly supports the finding, that, in November, 1976, "Bogue said [to Moody] he was paying too much for the amount of work Moody was doing; that Moody refused to accept management responsibilities and there would be no bonus if he was only going to be a draftsman and a bookkeeper." The court further found that "Moody was unwilling to take on additional responsibilities and was told by Bogue at the end of 1976 that there was no way he could continue to get the large bonuses for the type of work he was doing." The only reasonable conclusion from these facts is that defendant's statements effectively notified plaintiff that the twenty percent bonus would only continue if plaintiff performed to defendant's satisfaction by taking on more management responsibilities.

■ Although there is no case on point in Iowa, generally, an employment contract

terminable at will is subject to modification at anytime by either party as a condition of its continuance. *Robinson v. Phillips*, 175 Okl. 640, 54 P.2d 322, 323 (1936); *see also Gebhard v. Royce Aluminum Corp.*, 296 F.2d 17 (1st Cir. 1961). The employee's only alternative is to accept the new conditions or quit; an employee's decision to continue to work, knowing the newly proposed terms, results in the employee's acceptance as a matter of law. *Id.* at 19. For further discussions, *see* 56 C.J.S. Master and Servant § 9 (1945); 53 Am.Jur.2d Master and Servant § 73 (1970); *Weiss v. Duro Chrome Corp.*, 207 F.2d 298, 300 (8th Cir. 1953); *Swalley v. Addressograph Multigraph Corporation*, 158 F.2d 51, 54 (7th Cir.), *cert. denied*, 330 U.S. 845, 67 S.Ct. 1086, 91 L.Ed. 1290 (1946); *Hauser v. Watson*, 60 A.2d 698, 699 (D.C.1948); *Carter v. Kaskaskia Community Action Agency*, 24 Ill.App.3d 1056, 322 N.E.2d 574, 576 (1974); *Stream v. Continental Machines, Inc.*, 261 Minn. 289, 111 N.W.2d 785, 788 (1961); *Horowitz v. La-France Industries*, 274 App.Div. 46, 79 N.Y. S.2d 794, 796–97 (1948); *Page v. Thomas Kay Woolen Mills Co.*, 168 Or. 434, 123 P.2d 982, 984 (1942); *Trainer v. Laird, et al.*, 320 Pa. 414, 183 A. 40, 41 (1936); *L. G. Balfour Co. v. Brown*, 110 S.W.2d 104, 107 (Tex.Civ. App.1937); *Long v. Forbes*, 58 Wyo. 533, 136 P.2d 242, 246 (1943). *Contra, Balderacchi v. Ruth*, 36 Tenn.App. 421, 256 S.W.2d 390, 391 (1952). Since plaintiff in this case continued to work for the corporation, his employment continued under the terms of this modification.

Trial court findings also state "Bogue blamed Moody for the backup of shipments and complaints from customers and claims a loss of business resulted in 1976 and 1977." Trial court further found "[t]he business relationship between Moody and Bogue deteriorated during the year of 1977. Bogue continued to find fault with the way Moody was handling his job and, by the end of 1977, advised Moody that the bonus would be $12,533.69 representing approximately four percent of the company profit before taxes." We believe the record and these findings indicate that defendant was genuinely dissatisfied with plaintiff's perform-

ance. Since it is not the function of the court to pass on the reasonableness of the employer's dissatisfaction, but only the employer's good faith, the only permissible conclusion is that defendants' reduction of the bonus payment in 1977 was not a breach of the terms of the contract; it was in accordance with the contract as modified in 1976. *Sauter*, 188 N.W.2d at 309. We therefore conclude that trial court erroneously awarded plaintiff damages for a 1977 breach.

**VI. Individual Liability of R. A. Bogue.**
Trial court entered judgment against both R. A. Bogue and Hi-Way Products, Inc., for the sum of $61,201.06. Apparently trial court determined that the defendants were jointly and severally liable. Defendant Bogue asserts that he should be afforded the protection and limited liability that the corporate form of business provides. Accordingly, he claims that as a promoter the maximum extent of his liability is for debts incurred prior to incorporation, and as an officer of the corporation, acting in his official capacity, he is not liable for corporate debts. Plaintiff asserts that the contract for employment made with Bogue was executed prior to incorporation and thus Bogue is personally liable as a party to the contract. He further claims that since Bogue and the corporation were one in the same, the court should pierce the corporate veil and hold Bogue individually liable. We agree with the plaintiff's first contention.

As a general rule promotors are personally liable on contracts which they have entered into personally, even though they have contracted for the benefit of a projected corporation; the promoter is not discharged from liability by the subsequent adoption of the contract by the corporation when formed, unless there is a novation. *Decker v. Juzwik*, 255 Iowa 358, 371, 121 N.W.2d 652, 659 (1963). The essential elements of novation are (1) a previous, valid obligation; (2) the agreement of all parties to a new contract; (3) the extinguishment of the old contract; and (4) validity of the new one. *Tuttle v. Nichols Poultry & Egg Co.*, 240 Iowa 199, 209, 35 N.W.2d 875, 880

(1949). In the present case, there existed only one contract for employment. It was executed almost a year prior to incorporation and, although it may have been adopted by the corporation, we find no evidence that a new contract was executed and substituted for this agreement. Having found no novation, we conclude defendant Bogue, as promoter of the corporation, is personally liable for performance of the contract he made with plaintiff through 1976.

For the foregoing reasons, we affirm that part of trial court's judgment awarding plaintiff $12,000 for the 1976 breach, including interest at seven percent from January 1, 1977, and reverse that part of trial court's judgment in plaintiff's favor for $49,201.06 based on the 1977 breach. Costs are assessed equally against the parties.

AFFIRMED IN PART; REVERSED IN PART.

SNELL, J., takes no part.